THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DELBERT SCOTT, Defendant-Appellant.

First District (1st Division)    No. 63109

Opinion filed January 24, 1977.—Rehearing denied February 8, 1977.

James Geis and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Eugene J. Rudnik, Jr., and Jeffrey Singer, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BUA delivered the opinion of the court:

The defendant was convicted of aggravated battery (Ill. Rev. Stat. 1971, ch. 38, par. 12—4), rape (Ill. Rev. Stat. 1971, ch. 38, par. 11—1), aggravated kidnapping (Ill. Rev. Stat. 1971, ch. 38, par. 10—2) and two counts of armed robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—2). He received concurrent sentences of 25 to 50 years for the rape and armed robberies and a concurrent sentence of 3 to 10 years for the aggravated battery. No sentence was entered on the aggravated kidnapping conviction. On appeal he argues (1) that the conviction of aggravated kidnapping must be reversed since it arose out of the same conduct as the rape conviction, and (2) that the concurrent sentences of 25 to 50 years were excessive under the circumstances.

We affirm the judgments of the Circuit Court and the sentences

imposed thereon and remand for the entry of a sentence on the aggravated kidnapping conviction.

A review of the record reveals that late on the evening of July 19, 1973, James Steele and his sister-in-law, Paulette Steele, were getting into a car in Chicago when they were approached by two men, one of whom they later identified as the defendant. These men were at that time, and all times during the series of events that follows, armed, openly displaying handguns. The defendant told James Steele that he and his accomplice wanted to use the car, and that James should drive, threatening to harm or kill Paulette if James refused to cooperate fully. The four then got into the car, James in the driver's seat, Paulette next to him, and the two armed assailants in the back seat. The defendant sat directly behind James Steele, holding a gun to the back of Steele's head as he drove and threatening to kill him if any trouble developed.

As instructed, James drove to an open area when the defendant ordered him to stop the car and get out. The two men then tied James to a tree and made Paulette lie down on the ground near him. The defendant took James Steele's wristwatch and took from Paulette $8 which she had concealed in her bra. After the defendant again told James that all they wanted was to use the car, the two assailants put Paulette back into the car and the three drove off, leaving James tied to the tree. Shortly thereafter James managed to free himself and called police.

The defendant drove the car to the area of an abandoned theater building where the three got out of the car. At this point the defendant alone took Paulette to an empty lot adjacent to the building and raped her. He then forced her to climb the fire escape to the roof of the building where he choked her and beat her in the face and head with his gun until she lost consciousness. Some time later Paulette regained consciousness, began calling for help, and was eventually rescued by police and fire units.

It was stipulated that Paulette Steele was hospitalized for a week to receive treatment for multiple and severe injuries to her face and head. A pap smear test indicated the presence of semen in her vagina. Both James and Paulette Steele separately identified the defendant from police photos. When police officers arrested the defendant at his home on July 21, 1973, he told them "I am the man you are looking for. I committed the robbery, I stole the car, and kidnapped somebody, but I didn't commit the rape."

After a bench trial the defendant was found guilty as charged of aggravated kidnapping, aggravated battery, rape, and two counts of armed robbery. Judgments of conviction were entered on all counts.

At the hearing on aggravation and mitigation the evidence showed that

the defendant was 19 years old at the time of the offense and 20 years old at the time of trial, that he had no prior adult criminal record though he had been classified as a juvenile delinquent some years earlier, that he had been employed during two periods prior to his arrest, and that he lived with and claimed to support his two illegitimate children and their mother.

The court imposed concurrent sentences of 25 to 50 years for the rape and armed robbery convictions, and a concurrent sentence of 3 to 10 years for the aggravated battery. No sentence was entered on the conviction for aggravated kidnapping.

■■ The defendant first contends that since his convictions of aggravated kidnapping and rape arose out of the same conduct, only the conviction for the more serious offense can stand. This contention brings us into a troublesome area of the law. For some time there has been a good deal of conflict and uncertainty as to the basic test to be applied in determining whether convictions arise from the same "act" or "conduct." (See *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819, and cases cited therein; *People v. Johnson* (1977), 46 Ill. App. 3d 365, ___ N.E.2d ___; *People v. Sims* (1974), 20 Ill. App. 3d 1068, 313 N.E.2d 663; 1973 U. Ill. L.F. 423.) There is apparent agreement that in order for multiple convictions to properly arise from a series of related acts the court must be able to separate or disentangle the acts or chains of acts constituting each offense. Even those cases which seem to reflect the most narrow conception of what constitutes the same "conduct" do not suggest that as a general matter multiple convictions may rest on proof of elements which significantly overlap. (See *People v. Johnson* (1970), 44 Ill. 2d 463, 256 N.E.2d 343; *People v. Henderson* (1976), 36 Ill. App. 3d 355, 344 N.E.2d 239.) However, courts are at odds as to whether it is also necessary that the different offenses be marked by a shift or change in the offender's motivation. Interestingly, this discord has surfaced perhaps most clearly in cases involving essentially the same issue that is before this court, that is, whether a kidnapping and subsequent rape arose out of the same conduct. Compare *People v. Sims* with *People v. Whiteaker* (1975), 30 Ill. App. 3d 848, 334 N.E.2d 200, and compare *People v. Meredith* (1976), 37 Ill. App. 3d 895, 347 N.E.2d 55, with *People v. Henderson*.

■■ We are convinced, however, that the recent case of *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819, has resolved this basic conflict in favor of requiring some shift or change in the defendant's immediate motivation in order to support multiple convictions arising from a series of related acts. (See *People v. Meredith*.) *Williams* holds that if the acts constituting one offense, even though distinct and separable from the acts constituting a second offense, were motivated solely by a desire to achieve the objective of that second offense, only a conviction

for the more serious of the two offenses can stand. In *Williams*, the defendants illegally gained entry into a house and there, when confronted by its owner armed with a gun, shot and killed him. They were charged with and convicted of burglary, armed robbery, and murder. The court reversed the burglary conviction, reasoning that although the defendants had committed a series of acts and the crimes of burglary and armed robbery involve different elements of proof, the two crimes arose from the same conduct, since both reflected solely the original objective or motivation of robbing the house. However, the court upheld both the armed robbery and murder convictions on the logic that the murder reflected at least a partial shift in the offenders' motivations away from the original objective of robbery and toward the objective of avoiding injury or apprehension by the homeowner. Especially when considered together, the court's actions in reversing the burglary conviction and upholding the conviction of armed robbery illustrate that whether or not there is a continuity of the offender's motivation is a highly material and potentially decisive factor in determining whether convictions arise out of the same conduct.

Applying this law to the facts before us, we find that the present convictions of aggravated kidnapping and rape did not arise from the same conduct. First, while it is true that the cases support as a general rule the proposition that in order for multiple convictions to be proper it must be possible to distinguish between those acts constituting one offense and those acts constituting another, we find it necessary to make a reasoned exception for this type of case. Since where, as here, the rape is itself the aggravating factor to the kidnapping charge, the rape is an essential element of the crime of aggravated kidnapping. To insist on such a separation between the two offenses would be to hold that in such a situation the defendant can never be convicted of both aggravated kidnapping and rape, a result hardly intended by the legislature. It is patently clear that aggravated kidnapping, carrying a greater penalty than plain kidnapping (Ill. Rev. Stat. 1971, ch. 38, pars. 10—1(c) and 10—2(b)), was conceived as a deterrent to, among other things, the commission of a subsequent felony against the victim of the kidnapping (Ill. Rev. Stat. 1971, ch. 38, par. 10—2(a)(3)). To find that where the kidnapper, despite this deterrent factor, proceeds to commit a subsequent felony against his victim he can be convicted of that subsequent felony and possibly of plain kidnapping, but never of aggravated kidnapping would frustrate that clear legislative purpose. In other cases where multiple convictions relying on shared elements of proof were held to be improper, such as where an aggravated battery and attempt robbery both involved the same element of force (*People v. Stewart* (1970), 45 Ill. 2d 310, 259 N.E.2d 24), such a plain legislative

intention was not operative. See also *People v. Whittington* (1970), 46 Ill. 2d 405, 265 N.E.2d 679.

■■ Secondly, we find in the present facts that shift or change of motivation required by *Williams*. Any ambiguity in the other facts of the occurrence is forcefully resolved by the defendant's own statements to the victims during the course of the abduction that he and his accomplice wanted only to use the victim's car. Further, it is of no avail to argue that the defendant's motivation at the completion of the offense of aggravated kidnapping as charged was to commit a rape, for it is sufficient that the abduction began for purposes other than solely committing the rape and that the rape emerged as the exclusive objective somewhere later in the course of events.

The defendant relies heavily on *People v. Sims* (1974), 20 Ill. App. 3d 1068, 313 N.E.2d 663. In *Sims*, the defendants came upon a girl and her boyfriend parked on a country road, and robbed them at gunpoint. Then, leaving the boyfriend at the scene of the robbery, they drove the girl to a place 5 or 6 miles away and raped her. On these facts the court concluded that "the kidnapping was committed in order to effect the rape * * *" (20 Ill. App. 3d 1068, 1071, 313 N.E.2d 663, 666), and for this reason reversed the aggravated kidnapping conviction. Without passing judgment on the correctness of the *Sims* court's analysis of the facts before it, especially in light of the later-decided *Williams* case, we need only say that in the present case the facts do not permit us to draw that same conclusion. As was pointed out, the defendant by his own statements convincingly established that at the outset he and his accomplice wanted only to take the victim's car. Further support for the finding that the abduction was not solely motivated by a desire to commit the rape can be found in the fact that here, unlike in *Sims*, the abduction took place prior to the robbery and abandonment of the boyfriend, rather than immediately preceding the rape.

The defendant's second contention is that the concurrent sentences of 25 to 50 years imposed for the rape and two armed robberies are excessive under the circumstances. He refers to that passage of the Illinois Constitution which states:

> "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.)

Supreme Court Rule 615 (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4)) gives us the power, where appropriate, to reduce the punishment imposed by the trial court. However, it is well established that since the trial court is in a superior position to evaluate all of the factors that go into determining an appropriate sentence, where a sentence is within the limits prescribed by the legislature this power should be exercised only where

the sentence is greatly at variance with the purpose and spirit of the law or manifestly violative of the above-quoted constitutional guidelines. *People v. Sprinkle* (1974), 56 Ill. 2d 257, 307 N.E.2d 161; *People v. Garth* (1975), 31 Ill. App. 3d 716, 334 N.E.2d 359; *People v. Garriott* (1974), 20 Ill. App. 3d 994, 313 N.E.2d 189.

The defendant cites *People v. Jones* (1972), 6 Ill. App. 3d 669, 286 N.E.2d 87, and *People v. Patton* (1975), 25 Ill. App. 3d 840, 322 N.E.2d 592, as controlling on this issue. In *Jones*, a 20-year-old first offender's concurrent sentences of 50 to 100 years for rape and aggravated kidnapping were reduced by the appellate court. In *Patton*, under similar circumstances, concurrent sentences of 20 to 60 years were found to be excessive. However, the facts of these cases simply do not display the absolute disregard for the sanctity and dignity of human life which is spread across the record in the instant case. Without taking time to offer further illustration than that evident from our brief summary of the facts we note that the record in this case describes some of the most wanton criminal behavior imaginable. Further, the defendant was convicted of *five* felonies, four of which were of class 1 status. Under these circumstances we find that concurrent sentences of 25 to 50 years are not at variance with a reasonable appraisal of the seriousness of the criminal acts and the outlook for rehabilitation.

■■ Finally, we note that *People v. Robinson* (1974), 20 Ill. App. 3d 777, 314 N.E.2d 585, is much more in point than the cases cited by the defendant. In *Robinson* the defendant broke into a hotel room, tied up the husband and wife who were staying there with their daughter, raped the wife at knifepoint, and robbed both victims. He received sentences of 5 to 10 years on two counts of armed robbery and a *consecutive* sentence of 20 to 40 years for the rape. In view of the facts that the defendant was only 17 years old at the time of the offense, had no prior criminal record except for a few curfew violations, and was working to help support his brothers and sisters, the court ordered that the rape sentence be made to run *concurrently* with the sentences for armed robbery. In light of this, the concurrent sentences of 25 to 50 years for the rape and armed robberies in the present case were proper.

Accordingly, the judgment of conviction for aggravated kidnapping is affirmed, as are the sentences on the rape and armed robbery convictions, and this cause is remanded to the trial court for entry of a sentence on the aggravated kidnapping conviction.

Affirmed and remanded.

GOLDBERG, P. J., and McGLOON, J., concur.