THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ANTHONY EARL, Defendant-Appellant.

Second District   No. 80-867

Opinion filed March 18, 1982.

Mary Robinson and John J. Barrett, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant was convicted, in a jury trial, of armed violence, aggravated kidnaping, and kidnaping. He was acquitted of the charge of attempt murder. He appeals from his convictions and from his sentences of concurrent terms of 25 years' imprisonment for the offenses of aggravated kidnaping and armed violence, contending that it was error to enter judgment on both the conviction for aggravated kidnaping and the lesser included offense of kidnaping, and on both armed violence and the lesser included offense of aggravated battery. Also, that the information charging aggravated kidnaping was not supported by the proof; that the 25-year sentence for armed violence exceeded the statutory maximum for the use of a category II weapon; and that the sentences were excessive.

At approximately 1:40 a.m. on November 9, 1979, the complaining witness concluded her shift at Abbott Laboratories inNorth Chicago, and crossed to a small parking lot where her car was kept and was in the car waiting for it to warm up. She leaned over to look for an ice scraper on the floor and out of the corner of her eye, she saw "a pair of legs" cross in front of her car. Her next memory was her awakening in a hospital bed.

At about 1:45 a.m. a police officer followed a car which he noticed had its trunk open. After a chase the car pulled into a driveway. The officer aimed his spotlight and caught a brief glimpse of a man bolting out of the door. The man jumped a fence and was gone. The officer then found the victim unconscious in the trunk of the car. The officer was unable to positively identify the man fleeing from the car as the defendant. However, a print was lifted from the trunk area of the car and found to have 12 points of identification with the right index finger of the defendant. From the investigation of the scene, leaf and grass samples were shown to be covered with blood, and there was a trail of blood leading from the lot to bushes where a hood from a red vinyl coat was recovered. In addition, a crowbar was found in a leafy area. There was evidence that the crowbar had traces of type B blood and that the complaining witness' blood was type B while the defendant's blood type was type O.

There was medical evidence that the complaining witness was bruised on her chest, arms and legs, had a fractured skull, and 10 large lacerations from 1½ to 4 inches long on her head. Her earlobe had been split into two sections, there was medical opinion that the victim had been struck 10 or 11 times with a blunt instrument which had "some sort of an edge," and that each of the lacerations on the victim's head corresponded to one blow. The medical expert indicated that the injuries could have been caused by an object similar to the crowbar.

A witness, who was a co-worker of the victim and was also acquainted with the defendant, testified that on November 9, 1979, defendant appeared at his door and asked him to wash defendant's coat, and that he noticed that the coat had "little blood specks" on the right sleeve. The witness turned over the coat and a pair of shoes. It was determined that the shoes had traces of type B blood.

The tape recorded statement from the defendant was introduced into evidence and incorporated into the record on appeal. In the statement defendant said he noticed the car with its engine running in the parking lot, didn't see anyone in the car, so approached through an adjoining yard where he "found a crowbar." He then approached the car, crowbar in hand, and when it looked like no one was around came up to the vehicle. He said that suddenly a woman popped up through the open door of the automobile and startled him. He said that "I got scared, and I hit her

maybe three, four times, I'm not sure." He then carried the woman from the car to a group of bushes at the edge of the parking lot, and laid her body down between the hedges. He then drove her car around the block and through an alley, stopping again where her body lay. First he attempted to place her body in the back seat of the victim's car and when that didn't work threw her into the trunk and drove off. After he fled from the vehicle he later watched from the bushes as the victim's body was removed from the trunk. He noticed at the time that there was blood on his shoes. He said the next morning he went to a friend's home in Waukegan where his coat was washed.

The defendant in court recanted his taped confession, claiming he had been beaten. This was denied by the police on rebuttal. He testified that on the evening in question between 7 and 11 p.m. he attended band practice and left in the company of Sonny Harris. He and Harris went to a tavern where he said they stayed until 2 a.m. and thereafter spent the night at Harris' home. He claimed he had never seen the victim on November 9, 1979, and explained the blood on his coat and shoes as due to a fight he engaged in some time in January of 1980.

Harris testified that he had gone to the tavern with defendant but he wasn't sure of the exact date. He based his recollection on the fact that defendant and the other band members usually went there after band practice.

The major controversy involves defendant's challenge to his aggravated kidnaping conviction. Section 10—2(a)(3) of the Criminal Code of 1961 provides:

"Sec. 10—2. Aggravated kidnaping. (a) A kidnaper within the definition of paragraph (a) of Section 10—1 is guilty of the offense of aggravated kidnaping when he:

　　　*　*　*

(3) Inflicts great bodily harm or commits another felony upon his victim, or * * *." (Ill. Rev. Stat. 1979, ch. 38, par. 10—2(a)(3).)

The defendant argues that the statute requires that before there can be aggravated kidnaping the predicate offense of simple kidnaping must be complete; that, here, the only evidence is that his motivation to kidnap was formed subsequent to and separate from his infliction of great bodily harm.

■■ We first conclude that the statute does not preclude a finding that a kidnaping is aggravated simply because the great bodily harm precedes the completion of the offense of kidnaping. We agree, as defendant suggests, that a substantial purpose of the statute is to deter the commission of a subsequent felony against a kidnaped victim. (*People v. Scott* (1977), 45 Ill. App. 3d 487, 491.) We find nothing in the language of the

statute or in its purpose which precludes punishing more severely one who in the course of a kidnaping inflicts great bodily harm or commits another felony. We consider the key issue to be whether the infliction of the great bodily harm or the commission of another felony results from the same continuing state of mind as the kidnaping.

■■ There is sufficient evidence in this record from which the jury could reasonably infer that the severe beating of the victim and the later abduction resulted from a continuous state of mind. From the circumstances the jury could properly reject defendant's explanation in his statement that he intended initially only to steal the car and the infliction of the great bodily harm occurred in that connection. Ordinarily, a defendant's mental state is proved circumstantially by inferences reasonably drawn from the evidence. (*People v. Hancock* (1978), 65 Ill. App. 3d 694, 699.) The determination of a defendant's subjective mental state is ordinarily for the jury, and its verdict will not be disturbed unless the evidence is unreasonable or improbable. *People v. Evans* (1981), 87 Ill. 2d 77, 86.

■■ There was evidence that defendant dragged the unconscious victim to a nearby hedge where the crowbar and jacket were concealed. The fact that defendant shortly returned there and abducted the victim could lead to a reasonable inference that defendant, when he brutally attacked the victim, intended to remove her from the scene after first concealing her and taking steps to guard against his being observed by passersby. The jury was not required to accept defendant's statement as a reasonable hypothesis of innocence of the aggravated kidnaping and elevate it to the status of reasonable doubt. (*People v. Hancock* (1978), 65 Ill. App. 3d 694, 698.) The evidence adequately supported the jury's verdict finding defendant guilty of aggravated kidnaping as charged by the information. Ill. Rev. Stat. 1979, ch. 38, par. 10—2(a)(3).

■■ The State has conceded that the offense of kidnaping, as a lesser included offense of aggravated kidnaping, arose from closely related acts and that it was improper to convict defendant of both offenses. We agree. Ill. Rev. Stat. 1979, ch. 38, pars. 10—1, 10—2; *People v. Marin* (1971), 48 Ill. 2d 205, 210. See also *People v. King* (1977), 66 Ill. 2d 551, 566.

■■ The State also concedes, and we agree, that it was error to enter judgment on defendant's convictions for armed violence and its predicate offense, aggravated battery. Under the circumstances of this case both offenses appear to arise from the same physical acts, the beating of the victim, making multiple convictions improper. *People v. King* (1977), 66 Ill. 2d 551, 566.

The objection to sentencing includes a challenge to the imposition of a 25-year term on the armed violence for category II weapon, which

exceeded the statutory maximum. The State has properly conceded error on this issue. Defendant was charged with armed violence for use of a crowbar in the commission of aggravated battery. A crowbar for the purposes of the armed violence statute is classified as a "category II weapon." (Ill. Rev. Stat. 1979, ch. 38, par. 33A—1(c).) Thus, the sentence for a first offense of armed violence would be a Class 2 felony, or the felony classification for the predicate offense, whichever is greater. Ill. Rev. Stat. 1979, ch. 38, par. 33A—3(b).

■■ Here, aggravated battery is a Class 3 felony (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(e)); the Class 2 classification for armed violence would be applied. The maximum extended term applicable to a Class 2 felony is 14 years (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2(a)(4).) The trial court therefore abused its discretion by imposing sentence on the defendant well in excess of the maximum term for armed violence. This requires that the sentence be vacated.

■■ The defendant also claims that the 25-year sentence for aggravated kidnaping is excessive. However, the trial court detailed its finding that the commission of the offense was accompanied by exceptional brutal or heinous behavior indicative of wanton cruelty, and the finding is amply supported by the record. We will not disturb the exercise of the court's proper discretion. *People v. La Pointe* (1982), 88 Ill. 2d 482, 492.

The defendant's conviction and sentence for aggravated kidnaping are affirmed. The convictions of kidnaping and aggravated battery are vacated. The conviction of armed violence is affirmed. However, the sentence imposed for armed violence is vacated and the cause remanded for resentencing on that conviction.

Affirmed in part, vacated in part and remanded.

REINHARD and NASH, JJ., concur.