THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EZZARD CHARLES, Defendant-Appellant.

Second District No. 2—89—0406

Opinion filed August 15, 1991.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Linda Eigner and Michael J. Pelletier, both of State Appellate Defender's Office, of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Robert M. Podlasek, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

Following a bench trial in the circuit court of Du Page County, defendant Ezzard Charles was convicted of aggravated kidnapping and aggravated criminal sexual assault. (Ill. Rev. Stat. 1987, ch. 38, pars. 10—2(a)(3), 12—14(a)(1).) He was sentenced to concurrent terms of seven years' imprisonment on each conviction. On appeal defendant contends that the State failed to prove that he displayed a dangerous weapon, which was used to enhance the offense of criminal sexual assault to aggravated criminal sexual assault. In the sec-

ond issue, defendant claims that his conviction of aggravated kidnapping must be reduced to kidnapping because he was convicted of the same conduct, (aggravated) criminal sexual assault, which was then used to enhance the kidnapping offense to aggravated kidnapping.

The complainant, S.M., testified that she dated defendant for about one year during which time she had a sexual relationship with him. In September 1988 their relationship began to change, and she told defendant that she did not want to see him anymore. Defendant telephoned S.M. several times a day and told her he wanted to get back together.

On September 30, 1988, defendant spoke with S.M. for about 45 minutes at the restaurant where she worked as a waitress. She then drove him to his apartment, but he refused to get out of the car. She agreed to drive him to his workplace, and once there defendant told her he missed her and wanted to make love. When S.M. said that is not what she wanted, defendant put his hands under her skirt and began to tear her nylons. S.M. fled from the car, got a ride to a gas station from a motorist and called the police. She signed a complaint against defendant, and a criminal charge was still pending for that incident at the time of the instant trial.

After this incident, defendant continued to telephone S.M. several times a day. S.M. told him she would be his friend but not his girlfriend. S.M. saw defendant four times in October 1988 during which she brought him groceries, gave him money or watched football on television with him.

S.M. met with defendant's attorney, Steven Levin, in Chicago after work on November 1, 1988. She told Levin she would drop the earlier charge against defendant if Levin would persuade defendant to stop harassing her. S.M. then took the train to Roselle, Illinois, where she had parked her car. Arriving about 10:30 p.m., she saw defendant get out of a van and approach her. He grabbed her and screamed at her that she was going with him to talk. Defendant told S.M. that he was going to cut her up into little pieces if she did not do what he wanted. He threw S.M. into the van, and she fell between the seats. Defendant held her facedown as he drove.

Arriving in the parking lot of his apartment building, defendant told S.M. if she screamed or ran she would make it worse. He took her into the building by her arm, brought her into his apartment, and locked the door. Defendant showed S.M. a knife, which he took from his pocket. He said he brought the knife to scare her. She saw the knife for less than a minute. S.M. testified that she was not as

much afraid of the knife as she was afraid of defendant. Defendant instructed her to disrobe and then go into the bedroom.

While S.M. was in the bedroom, defendant went into the bathroom for about a minute. He took off his clothes. He talked to S.M. about missing her and getting back together. During this time defendant placed his penis in S.M.'s vagina four times. She did not know where the knife was during this time. Afterward defendant drove S.M. to her car. She went to the police and then was taken to a hospital.

Dr. Kenneth McKee examined S.M. and observed tenderness and redness in the external genitalia consistent with nonconsensual intercourse. Officer Kevin Toomey recovered the knife from the headboard of defendant's bed. The knife was described as having a wooden handle, and the blade was partially broken off so that the length of the blade was about 1½ inches.

Defendant testified on his own behalf. S.M. never told him she wanted to stop seeing him. They continued to have a sexual relationship throughout October 1988. The incident on September 30, 1988, was described by defendant as an argument that occurred after he and S.M. were going to have sex in the car.

Defendant said that S.M. agreed to meet him at the train station on November 1, 1988. They drove to his apartment and engaged in consensual intercourse. He denied threatening S.M. or forcing her into the van.

First, defendant contends his conviction of aggravated criminal sexual assault should be reduced to criminal sexual assault, and the cause remanded for resentencing, because the State failed to prove beyond a reasonable doubt that he was armed with a dangerous weapon or an object S.M. reasonably believed to be a dangerous weapon based upon the character of the knife.

Any weapon specifically listed in section 33A—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 33A—1) is considered to be a *per se* dangerous weapon. (*People v. Ptak* (1990), 193 Ill. App. 3d 782.) A weapon not listed can become a dangerous weapon when it is used in a manner dangerous to the well-being of the individual threatened. (*People v. Weger* (1987), 154 Ill. App. 3d 706, 712.) A knife with a blade less than three inches in length could be dangerous if it is used in such a manner. (*People v. Chrisos* (1986), 142 Ill. App. 3d 747; *People v. Samier* (1985), 129 Ill. App. 3d 966; *People v. Hall* (1983), 117 Ill. App. 3d 788.) Whether a particular object qualifies as a dangerous weapon depends upon the character of that object and is usually a question of fact for the fact

finder. (*People v. Westefer* (1988), 169 Ill. App. 3d 59.) However, where the character of the weapon is such as to admit of only one conclusion, it becomes a question of law. (*Westefer*, 169 Ill. App. 3d at 61-62.) In *Westefer* this court found that a utility knife used in an armed robbery which had a six-inch metal grip and a one-inch, heavy-duty, single-edged sharp blade was *per se* a deadly weapon.

■ The offense of aggravated criminal sexual assault is committed when, during the commission of a sexual assault, "the accused displayed, threatened to use, or used a dangerous weapon or any object fashioned or utilized in such a manner as to lead the victim under the circumstances reasonably to believe it to be a dangerous weapon." (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(1).) Although defendant claims that the State did not allege the knife was a dangerous weapon *per se* based upon the indictment, the record shows that, in addition to count VI referred to by defendant, count II alleged that defendant "while threatening to use a dangerous weapon, a knife" committed criminal sexual assault. The trial court found defendant guilty of both aggravated criminal sexual assault charges but sentenced on only count VI. In any event there is no basis to reduce defendant's conviction given the facts of this case, which show that S.M. reasonably believed the knife to be a dangerous weapon. *People v. Phillips* (1989), 181 Ill. App. 3d 144.

In determining whether an instrument was a dangerous weapon, the supreme court has stated that " 'when the character of the weapon is doubtful or the question depends upon the manner of its use it is a question for the jury [fact finder] to determine from a description of the weapon, from the manner of its use and the circumstances of the case.' " *Phillips*, 181 Ill. App. 3d at 150, quoting *People v. Robinson* (1978), 73 Ill. 2d 192, 202.

Defendant had threatened to cut S.M. into little pieces, and he told her things would be worse for her if she ran or screamed. While defendant points out that these statements were made without the knife being shown to S.M., we note in *People v. Ramsey* (1986), 147 Ill. App. 3d 1084, the defendant told another man to get a shotgun from the trunk and threatened to kill complainant. Complainant did not see a shotgun.

After making these threats, defendant brought S.M. into his apartment and locked the door with the dead-bolt lock. He then displayed the knife, telling her he brought it along to scare her. S.M. was afraid of the knife although not as afraid as she was of defendant. He ordered her to disrobe and to go into the bedroom. While defendant points out that he did not "brandish" or specifically

threaten her with the knife, the totality of the circumstances proves beyond a reasonable doubt that he "displayed, threatened to use, or used *** [an] object fashioned or utilized in such a manner as to lead the victim *** reasonably to believe it to be a dangerous weapon." Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(1).

Defendant notes that S.M. was so "unconcerned" about the knife that she paid no attention to its whereabouts after he displayed it to her. However, the testimony showed that S.M. was afraid and she was crying when defendant assaulted her. Defendant also argues that some of the cases cited by the State involved actual injuries to the complainants caused by the object. First, the statute does not require injury from the object reasonably believed to be a dangerous weapon. Second, actual injury or harm upon a victim is not a prerequisite to an instrumentality being classified as a deadly weapon. (*People v. Ratliff* (1974), 22 Ill. App. 3d 106; see *People v. Hill* (1977), 47 Ill. App. 3d 976.) Based on the evidence before the trial court, the conviction of aggravated criminal sexual assault will not be reduced on appeal. See *Phillips*, 181 Ill. App. 3d at 151.

In defendant's second issue, he contends that his conviction of aggravated kidnapping should be reduced to kidnapping and the cause remanded for resentencing because the same conduct that formed the basis for the sexual assault conviction was also used to enhance the kidnapping offense to aggravated kidnapping. (*People v. Donaldson* (1982), 91 Ill. 2d 164.) He argues that the sexual assault is an included, although not lesser, offense of aggravated kidnapping. He acknowledges that there was a separate offense of kidnapping from the offense of sexual assault.

This argument was rejected in *People v. Scott* (1977), 45 Ill. App. 3d 487, *aff'd* (1977), 69 Ill. 2d 85, wherein the defendant claimed that his conviction of aggravated kidnapping and rape arose out of the same conduct. As a basis for its decision, the *Scott* court found that aggravated kidnapping, carrying a greater penalty than kidnapping, was conceived by the legislature as a deterrent to, among other things, the commission of a subsequent felony against the victim of the kidnapping. The clear legislative purpose allowed convictions on aggravated kidnapping and rape. Defendant herein argues that this reasoning is faulty where the subsequent felony is the same or a greater class felony than aggravated kidnapping because a person who is going to commit the same or greater class felony will not be deterred by enhancing kidnapping to aggravated kidnapping. We find that this argument has no merit.

We also note that the supreme court in affirming *Scott* (45 Ill. App. 3d 487), on another issue, specifically found that the imposition of punishment on the *aggravated kidnapping* conviction was in accord with its recent decision of *People v. King* (1977), 66 Ill. 2d 551. (*People v. Scott* (1977), 69 Ill. 2d 85, 88.) Although the instant defendant claims the supreme court merely agreed that Scott's conduct supported a separate conviction of kidnapping, the opinion refers to aggravated kidnapping, the only kidnapping conviction against Scott.

The United States Court of Appeals for the Seventh Circuit in *Nelson v. Thieret* (7th Cir. 1986), 793 F.2d 146, has held that the Illinois legislature specifically authorized a conviction of both the felony that is the predicate for aggravated kidnapping and aggravated kidnapping itself. The Appellate Court for the Fourth District also followed *People v. Scott* (1977), 45 Ill. App. 3d 487, in *People v. Smith* (1987), 154 Ill. App. 3d 837. The Appellate Court for the Second District has also noted that a defendant may be properly convicted of both the aggravated crime and the second felony used to enhance that crime to an aggravated offense. (*People v. McDarrah* (1988), 175 Ill. App. 3d 284, 300, citing *Scott*, 45 Ill. App. 3d 487.) The *McDarrah* court rejected, however, the use of the aggravated crime to enhance the second felony thus creating two aggravations and double enhancement of the penalty. Unlike *McDarrah*, the criminal sexual assault herein was not enhanced to aggravated criminal sexual assault by the kidnapping. Defendant's conviction of aggravated kidnapping was proper.

The judgment of the circuit court is affirmed.

Affirmed.

McLAREN and GEIGER, JJ., concur.