THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CASEY D. GAZELLE, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. SCOTT E. REDNOUR, Defendant-Appellee.

Fourth District   Nos. 4—91—0820, 4—91—0907 cons.

Opinion filed June 11, 1992.

John B. Huschen, State's Attorney, of Eureka (Norbert J. Goetten, Robert J. Biderman, and Leslie Hairston, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and Susan Alesia, both of State Appellate Defender's Office, of Springfield, for appellee Casey D. Gazelle.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellee Scott E. Rednour.

JUSTICE STEIGMANN delivered the opinion of the court:

These consolidated appeals present the issue of whether a person can commit the offense of bringing contraband into, or possessing contraband in, a penal institution (Ill. Rev. Stat. 1989, ch. 38, pars. 31A—1.1(a), (b)) when the alleged contraband is a small scissors. The trial court held as a matter of law that a small scissors was not contraband under the statute defining those offenses and dismissed the charges against both defendants. We agree and affirm.

## I. BACKGROUND

### A. Case No. 4—91—0820

In case No. 4—91—0820, the State charged defendant Casey D.

Gazelle on September 4, 1991, with bringing contraband into a penal institution in violation of section 31A—1.1(a) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 31A—1.1(a)), alleging that on August 31, 1991, he "knowingly and without authority of any person designated or authorized to grant such authority brought an item of contraband, a weapon, into the Woodford County Jail, a penal institution."

On October 21, 1991, Gazelle filed a motion to dismiss, arguing that the contraband the State claimed he brought into a penal institution—a small scissors—failed to fit the definition of contraband as contained in section 31A—1.1(c)(2) of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 31A—1.1(c)(2)). On October 31, 1991, at the hearing on that motion, the parties stipulated that the alleged contraband that was the basis of the charge against Gazelle was a pair of fold-up scissors with blades 1³/₈ inches long. They further stipulated that each scissors blade came to a point.

The trial court granted Gazelle's motion, holding that his bringing the scissors into the penal institution could not constitute an offense under section 31A—1.1(a) of the Code. The trial court dismissed the indictment against Gazelle, and the State appeals that dismissal.

### B. Case No. 4—91—0907

In case No. 4—91—0907, the State charged defendant Scott E. Rednour on September 4, 1991, with possession of contraband in a penal institution in violation of section 31A—1.1(b) of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 31A—1.1(b)), in that on August 31, 1991, he "possessed an item of contraband, a weapon, in the Woodford County Jail, a penal institution." On October 15, 1991, Rednour made a motion to dismiss on the ground that the alleged contraband—the same scissors at issue in Gazelle's case—did not fit under the definition of contraband contained in section 31A—1.1(c)(2) of the Code. This case involved the same scissors because Gazelle had allegedly smuggled the scissors in a plastic bag hidden in the crotch of his pants into the Woodford County jail in order to get the scissors to Rednour, a jail inmate at the time, so that Rednour could trim his moustache. The scissors were ultimately found in Rednour's jail cell.

On November 25, 1991, at the hearing on Rednour's motion to dismiss, the parties stipulated that the court could consider the transcript of the proceedings from Gazelle's similar motion to dismiss. The parties agreed not to present further evidence or arguments. The trial court again held that the scissors did not come within the definition of contraband in section 31A—1.1(c)(2) of the Code. The court dismissed

the indictment against Rednour, and the State appeals that dismissal as well.

## II. ANALYSIS

These consolidated appeals require this court to construe section 31A—1.1 of the Code, which reads, in pertinent part as follows:

"Bringing Contraband into a Penal Institution; Possessing Contraband in a Penal Institution. (a) A person commits the offense of bringing contraband into a penal institution when he knowingly and without authority of any person designated or authorized to grant such authority (1) brings an item of contraband into a penal institution ***.

(b) A person commits the offense of possessing contraband in a penal institution when he possesses contraband in a penal institution, regardless of the intent with which he possesses it.

(c) For the purposes of this Section, the words and phrases listed below shall be defined as follows:
\*\*\*

(2) 'Item of contraband' means any of the following:
\* \* \*

(v) 'Weapon' means any knife, dagger, dirk, billy, razor, stiletto, broken bottle, or other piece of glass which could be used as a dangerous weapon. Such term includes any of the devices or implements designated in subsections (a)(1), (a)(3) and (a)(6) of Section 24—1 of this Act, or any other dangerous weapon or instrument of like character." Ill. Rev. Stat. 1989, ch. 38, pars. 31A—1.1(a), (b), (c)(2)(v).

Because section 31A—1.1(c)(2)(v) of the Code refers to sections 24—1(a)(1), (a)(3), and (a)(6) of the Code, we also quote those sections, in pertinent part, as follows:

"Unlawful Use of Weapons. (a) A person commits the offense of unlawful use of weapons when he knowingly:

(1) Sells, manufactures, purchases, possesses or carries any bludgeon, black-jack, slung-shot, sand-club, sand-bag, metal knuckles, throwing star, or any knife, commonly referred to as a switchblade knife, which has a blade that opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife, or a ballistic knife, which is a device that propels a knifelike blade as a projectile by means of a coil spring, elastic material or compressed gas; or
\*\*\*

(3) Carries on or about his person or in any vehicle, a tear gas gun projector or bomb or any object containing noxious liquid gas or substance ***; or

* * *

(6) Possesses any device or attachment of any kind designed, used or intended for use in silencing the report of any firearm." Ill. Rev. Stat. 1989, ch. 38, pars. 24—1(a)(1), (a)(3), (a)(6).

Section 31A—1.1(c)(2)(v) of the Code, defining the term "weapon," contains the descriptions we must analyze to resolve these appeals. That section is composed of two sentences, and we will analyze each sentence in turn.

The first sentence reads as follows: " 'Weapon' means any knife, dagger, dirk, billy, razor, stiletto, broken bottle, or other piece of glass which could be used as a dangerous weapon." (Ill. Rev. Stat. 1989, ch. 38, par. 31A—1.1(c)(2)(v).) It is readily apparent that the scissors do not fit any description of "knife, dagger, dirk, billy, razor, stiletto, [or] broken bottle." The phrase at the end of that sentence—"which could be used as a dangerous weapon"—does not help the State in its efforts to include the scissors within the definition of "weapon" because that phrase clearly modifies only the words "or other piece of glass" and does not otherwise stand alone. Because scissors are obviously not a "piece of glass," we conclude that the scissors at issue in these cases do not fit any of the descriptions contained in the first sentence of section 31A—1.1(c)(2)(v) of the Code.

The second sentence of that section reads as follows: "Such term [meaning the term 'weapon'] includes any of the devices or implements designated in subsections (a)(1), (a)(3)[,] and (a)(6) of Section 24—1 of this [Code] or any other dangerous weapon or instrument of like character." Considering first the references to subsections of section 24—1 of the Code, and analyzing them in reverse order, it is again readily apparent that subsections (a)(6) and (a)(3) of section 24—1 do not apply at all to the scissors at issue in the present cases. Subsection (a)(6) deals only with devices used for silencing the report of a firearm, and subsection (a)(3) deals only with bombs or noxious substances. Subsection (a)(1) has a rather extensive listing of devices—"bludgeon, black-jack, slung-shot, sand-club, sand-bag, metal knuckles, throwing star, or any knife, commonly referred to as a switchblade knife, *** or a ballistic knife"—but again none of the items described remotely compares to a small scissors.

Although the State correctly points out that the small pair of scissors could be used as a knife, that assertion does not help its position

because characterizing anything as a mere knife does not make it come under section 24—1(a)(1) of the Code; instead, a knife must either be a switchblade knife or a ballistic knife to come under section 24—1(a)(1) of the Code, and the scissors at issue are neither.

Thus, in order for the State to succeed in its characterization of the scissors as a "weapon" under section 31A—1.1(c)(2)(v) of the Code, the scissors must fit under the last portion of the second sentence of that section, which reads as follows: "or any other dangerous weapon or instrument of like character." (Ill. Rev. Stat. 1989, ch. 38, par. 31A—1.1(c)(2)(v).) In fact, this is the argument the State made at trial and repeats here on appeal. However, we find that argument distorts the plain meaning of the words used in that sentence. In our view, the phrase "or any other dangerous weapon or instrument of like character" means a dangerous weapon or instrument of a character like those in the portion of the sentence immediately preceding the word "or," which is the following: "any of the devices or implements designated in subsections (a)(1), (a)(3)[,] and (a)(6) of Section 24—1." In other words, merely being a dangerous weapon or an object which could be used like a dangerous weapon is not enough to place an object within the descriptions contained in sections 24—1(a)(1), (a)(3), or (a)(6) of the Code. Instead, to fit under this reference in section 31A—1.1(c)(2)(v), such an object must be similar to the other dangerous weapons or instruments set forth in section 24—1(a)(1), (a)(3), or (a)(6), and cannot be just a potential dangerous weapon or instrument of *whatever* character.

In our judgment, that is the erroneous interpretation the State would have us make of section 31A—1.1(c)(2)(v) of the Code as it defines "weapon." In rejecting the State's argument, we find guidance in the recent Illinois Supreme Court decision, *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 441-42, wherein the court discussed statutory construction and wrote the following:

"The primary rule of statutory construction is to determine and give effect to the intent of the legislature. (*Stewart v. Industrial Comm'n* (1987), 115 Ill. 2d 337, 341.) The language of the statute itself gives the best indication of that intent. (*American Country Insurance Co. v. Wilcoxon* (1989), 127 Ill. 2d 230, 238.) Where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions, despite the lack of any negative words of limitation. *Department of Corrections v. Civil Service Comm'n* (1989), 187 Ill. App. 3d 304, 310; 2A N. Singer, Sutherland on Statutory Construction §47.23 (Sands 4th ed. 1992)."

In section 31A—1.1(c)(2)(v), the legislature elected to "list[] the things to which it refers," namely, the various weapons specified either within that section or by reference to the subsections of section 24—1 of the Act, thereby causing "an inference that all omissions should be understood as exclusions, despite the lack of any negative words of limitation." *Burke*, 148 Ill. 2d at 442.

Furthermore, the Code provides convincing evidence that the legislature can make its intent perfectly clear regarding how generally or how specifically it wishes to categorize weapons. For instance, as opposed to the specificity the legislature used in defining "weapon" in section 31A—1.1(c)(2)(v) of the Code, the legislature has used the most general of descriptions in other sections of the Code. See section 18—2(a) of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 18—2(a)), defining armed robbery as being committed when a person commits the offense of robbery (see Ill. Rev. Stat. 1989, ch. 38, par. 18—1) and carries or is otherwise armed "with a dangerous weapon"; section 12—4(b)(1) of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(1)), defining aggravated battery as being committed when a person commits a battery (see Ill. Rev. Stat. 1989, ch. 38, par. 12—3) and "[u]ses a deadly weapon"; section 10—3.1(a) of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 10—3.1(a)), defining aggravated unlawful restraint as being committed when a person knowingly and without legal authority detains another "while using a deadly weapon"; and section 12—11(a)(1) of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 12—11(a)(1)), defining home invasion as being committed when, under certain circumstances, a person enters the dwelling place of another "[w]hile armed with a dangerous weapon."

The clearest example of the legislature's ability to use general and intentionally broad language when referring to weapons appears in section 12—14(a)(1) of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(a)(1)), defining aggravated criminal sexual assault as follows:

> "(a) The accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during the commission of the offense:
>
> (1) the accused displayed, threatened to use, or used a dangerous weapon or any object fashioned or utilized in such a manner as to lead the victim under the circumstances reasonably to believe it to be a dangerous weapon."

The State argues that the trial court erred by ruling that the scissors was not a dangerous weapon because "whether a particular object qualifies as a dangerous weapon or [is] susceptible to use in a

manner likely to cause serious injury is a question of fact." The State then cites several cases so holding, but fails to note that in each of those cases, the defendant was charged with an offense in which the term "dangerous weapon" was used without any accompanying specifics that might limit the scope of that term. The cases the State cites, among others, are *People v. Westefer* (1988), 169 Ill. App. 3d 59, 522 N.E.2d 1381 (defendant charged with armed robbery); *People v. Charles* (1991), 217 Ill. App. 3d 509, 577 N.E.2d 534 (defendant charged with aggravated criminal sexual assault in violation of section 12—14(a)(1) of the Code); and *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164 (defendant charged with armed robbery).

The State in effect asks this court to rewrite section 31A—1.1(c)(2)(v) of the Code so that it would contain the same generalized description of a dangerous weapon as is contained in section 12—14(a)(1). We decline to do so, noting that it is the province of the legislature to draft statutes, not this court. If the legislature were to decide that a broader interpretation of the word "weapon" is needed or desirable than the interpretation given to that word in this opinion, the legislature could amend section 31A—1.1(c)(2)(v) of the Code to make more general that statute's reference to weapons, as is the case with the armed robbery, aggravated criminal sexual assault, aggravated battery, and aggravated unlawful restraint statutes mentioned earlier.

Last, we view our holding in this case as consistent with the recent decision of this court in *People v. Morissette* (1992), 225 Ill. App. 3d 1044, 1049, 589 N.E.2d 144, 148, in which we affirmed the trial court's dismissal of a charge of unlawful possession of contraband in a State penal institution, in violation of section 31A—1.1(b) of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 31A—1.1(b)), on the ground that the hacksaw blade at issue in *Morissette* did not come within the definition of contraband prohibited by section 31A—1.1 of the Code.

For the reasons stated, we affirm the judgments in each of these consolidated cases, which granted the defendants' motions to dismiss the charges against them.

Affirmed.

GREEN, P.J., and LUND, J., concur.