OPINION OF THE COURT BY CHIEF JUSTICE MINTON
*558 A circuit court jury found Daymond Malone guilty of kidnapping with serious physical injury, assault under extreme emotional disturbance, first-degree fleeing or evading, second-degree fleeing or evading, and no operator's license. The trial court sentenced Malone to seventy years in prison. Malone now brings this appeal from the resulting judgment as a matter of right,[1] raising a single issue regarding the kidnapping conviction that is a matter of first impression in Kentucky.
Malone argues that the serious physical injury suffered by the victim was inflicted before the kidnapping occurred, so the trial court erred when it instructed the jury on the crime of kidnapping with serious physical injury. We reject Malone's argument. We hold that it would not be unreasonable for the jury to believe from the evidence that Malone, by inflicting serious physical injury upon his victim before specifically manifesting to her his intent to confine her, wanted the victim to know or believe, through the act of inflicting physical injury, that she would be unable to escape from confinement, thus intimidating the victim into staying put. The trial court did not err in instructing the jury on the crime of kidnapping with serious physical injury, so we affirm the judgment.
I. BACKGROUND.
The facts of this case are mostly undisputed. Malone and the victim, Monic Pinkston, shared an intimate relationship before Pinkston decided to end it. The two remained friends leading up to the events giving rise to Malone's convictions.
Very early in the morning, Pinkston left her house to go to work. As she approached her vehicle,[2] she found Malone asleep in the backseat. Pinkston testified that she told Malone that she was "not O.K." with him staying in her car, which led to an argument between the two. Nonetheless, Pinkston drove to work with Malone in the passenger seat of the car.
Upon arriving at work, Pinkston told Malone to leave. After a brief period, a co-worker told Pinkston that Malone was driving off with her car. Pinkston stopped him. Pinkston testified that she told Malone she was going to call the police; but in her statement to the police, Pinkston stated that she simply told Malone to leave.
On her lunch break at mid-morning, Pinkston discovered Malone sleeping in the backseat of her vehicle. Pinkston told Malone that she was sick of him following her, did not want to be with him, and could not be in a relationship at this time, to which Malone responded that he loved her and wanted to be with her. Malone then asked Pinkston to take him to his cousin's house, to which Pinkston, after resisting, eventually agreed.
*559 Upon arriving at Malone's cousin's house, Pinkston testified that Malone stated that "he was sorry he had to do this."[3] Malone then proceeded to physically assault Pinkston, inflicting three stab wounds and causing serious physical injury.[4] Malone continued to wrestle with Pinkston as he moved from the back of the car to the front seat. Pinkston testified that Malone kept her in the car and told her to drive.
Malone eventually directed Pinkston to drive to a park. During the drive, Pinkston told Malone that the car was running out of gas. Upon arriving at a gas station, Malone told Pinkston to find her debit card and pay for gas at the pump. Malone and Pinkston then engaged in another physical altercation, and Pinkston was able to escape the vehicle but not before Malone bit her left eye. When Pinkston fled the vehicle, Malone drove off, but was eventually apprehended by police.
II. ANALYSIS.
Malone alleges the trial court erred in only one way-the trial court should not have instructed the jury on kidnapping with serious physical injury, which enhances kidnapping from a Class B to a Class A felony, because the kidnapping of Pinkston did not begin until after the stabbing occurred. Specifically, Malone argues that no restraint or kidnapping commenced until Malone prevented Pinkston from exiting the vehicle after the stabbing and physical altercation occurred.
The parties do not dispute the preservation of this issue, but they do dispute how this Court should review this issue. "When faced with a sufficiency-of-the-evidence challenge such as ... erroneously giving a jury instruction on a particular crime, the appellate court must determine whether, 'after viewing the evidence in the light most favorable to the Commonwealth, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "[5] Directly taken from his brief, Malone is arguing that "there was no evidence to support that Ms. Pinkston suffered a serious physical injury during the kidnapping."[6] This "sufficiency-of-the-evidence challenge"[7] forms the basis for Malone's argument that the trial court erroneously instructed the jury on kidnapping with serious physical injury. So we will review this alleged error using the Benham standard.
The trial court instructed the jury on kidnapping with serious physical injury in the following way:
You will find the defendant guilty of Kidnapping under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
(A) That in this county on or about the 5th day of June 2014, he restrained Monic Pinkston by preventing her from exiting the vehicle by use of or threat of a knife;
(B) That the restraint was without Monic Pinkston's consent;
*560 (C) That in so restraining Monic Pinkston, it was the defendant's intention to inflict bodily injury or to terrorize Monic Pinkston or another person; AND
(D) That Monic Pinkston suffered a serious physical injury during the kidnapping.
Essentially, Malone argues that the stabbing and physical altercation that he inflicted upon Pinkston before he told her to drive to the park does not constitute "restraint," meaning the kidnapping cannot be said to have occurred until after the physical altercation, when Malone prevented Pinkston from leaving the vehicle and told her to drive to the park. Stated differently, Malone is arguing that no rational jury could believe that his infliction of a serious physical injury upon Pinkston occurred during his kidnapping of her. We find Malone's argument meritless.
KRS 509.010 defines restrain to mean:
[T]o restrict another person's movement in such a manner as to cause a substantial interference with his liberty by moving him from one place to another or by confining him either in the place where the restriction commences or in a place to which he has been moved without consent. A person is moved or confined "without consent" when the movement or confinement is accomplished by physical force, intimidation, or deception, or by any means, including acquiescence of a victim, if he is under the age of sixteen (16) years, or is substantially incapable of appraising or controlling his own behavior.
Inflicting serious physical injury on an individual in and of itself does not constitute kidnapping. But, as in this case, when a defendant inflicts serious physical injury before relaying any verbal or other kind of manifestation that the victim cannot leave but then relays such a manifestation after the infliction of the harm, the totality of the action "restrict[s] [the victim's] movement in such a manner as to cause a substantial interference with his liberty by ... confining him ... in the place where the restriction commences ... by physical force [and] intimidation." When the act is looked at in its totality, the infliction of serious physical injury can be said to be the first step in the kidnapping, because the infliction, coupled with the command to stay put, evidences to a reasonable jury an intent to kidnap-formed before the physical harm occurred-that the defendant acted upon.
When a manifestation of confinement is relayed from the defendant to the victim after the defendant has inflicted serious physical injury on the victim, as is the case here, it is not unreasonable for the jury to believe that the defendant manifested the intent to kidnap before the infliction of serious physical injury and acted upon that intent by first attempting to weaken or immobilize the victim to more easily confine the victim. It is not unreasonable for the jury to believe that the defendant, by inflicting serious physical injury upon the victim before specifically manifesting to the victim an intent to confine, wanted the victim to know or believe, through the previous act of inflicting physical harm, that the victim would be unable to escape from confinement, thus intimidating the victim into staying put. In this way, the victim can be said to have been "restrained" because the infliction of serious physical injury, coupled with a later manifestation by the defendant to the victim that the victim is not free to leave, constitutes a restriction on the victim's ability to exercise his or her liberty of *561 movement through physical force and intimidation.
Because this is an issue of first impression in Kentucky, we note that other jurisdictions have concluded similarly.[8]
As such, the trial court did not err in its instructions to the jury because Pinkston did suffer a serious physical injury "during the kidnapping,"[9] as Malone's infliction of serious physical injury upon Pinkston can be said to be the "first step of the kidnapping."[10]
III. CONCLUSION.
Finding no error on the part of the trial court, we affirm the judgment.
All sitting. All concur.

Ky. Const. § 110 (2)(b).

Malone stated that he purchased the vehicle but registered it to Pinkston because he did not have a driver's license, with the understanding that he would always have access to it.

Pinkston admitted that she never told police Malone said this.

The fact that Pinkston suffered a serious physical injury is undisputed.

Commonwealth v. Hasch , 421 S.W.3d 349, 356-57 (Ky. 2013) (citing Commonwealth v. Jones, 283 S.W.3d 665, 668 (Ky. 2009) ; quoting Commonwealth v. Benham , 816 S.W.2d 186, 187-88 (Ky. 1991) ).

(emphasis in original).

Hasch, supra note 6.

See, e.g., Gooch v. U.S., 82 F.2d 534 (10th Cir. 1936) (cert. den. Gooch v. U.S., 298 U.S. 658, 56 S.Ct. 683, 80 L.Ed. 1383 (1936) ) (fact that the injury was inflicted in a struggle which preceded defendant forcing victim into an automobile and transporting him into another state did not preclude imposition of the death penalty, as the Court rejected the defendant's contention that the wound was inflicted "prior to the kidnapping"); Greene v. State, 295 Ga.App. 803, 673 S.E.2d 292 (2009) (strangulation occurring before defendant moved the victim was the "first step in the kidnapping"); Carter v. State, 268 Ga.App. 688, 603 S.E.2d 56 (2004) (Court rejecting argument that the victim was injured before kidnapping and upholding his enhanced kidnapping conviction); James v. State, 239 Ga.App. 541, 521 S.E.2d 465 (1999) (stun gun to the face of the victim was the "first step of the kidnapping; it immobilized the victim and allowed [the defendant] and his accomplice to drag the victim into the washroom and to bind him with tape"); People v. Earl, 104 Ill.App.3d 846, 60 Ill.Dec. 680, 433 N.E.2d 722 (1982) (beating of victim before subsequent abduction allowed kidnapping charge to be enhanced).

See KRS 509.040(2).

See supra note 8.