THIRD DIVISION

DECEMBER 21, 2005

1-04-1660 

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the 

) Circuit Court of 

Plaintiff-Appellee, ) Cook County.

)

v. ) No. 99 CR 26084

)

LAWRENCE McCOLLER, ) Honorable

) William G. Lacy,

Defendant-Appellant. ) Judge Presiding.

JUSTICE ERICKSON delivered the opinion of the court:

Defendant Lawrence McColler was convicted following a bench trial of one count of home invasion, two counts of aggravated criminal sexual abuse, and two counts of attempted aggravated criminal sexual assault.  Defendant received a 45-year extended-term sentence for home invasion, a 7-year sentence for each aggravated criminal sexual abuse conviction, and a 15-year sentence for each attempted aggravated criminal sexual assault conviction, to be served concurrently.  

Defendant contends on appeal that: (1) the State failed to prove him guilty beyond a reasonable doubt of home invasion because the evidence was insufficient to prove he knew one or more persons were in the home; (2) the State failed to prove him guilty beyond a reasonable doubt of home invasion, aggravated criminal sexual abuse and attempted aggravated criminal sexual assault because the evidence was insufficient to prove the knife he used constituted a "dangerous weapon"; (3) one of his attempted aggravated criminal sexual assault convictions must be vacated where there was only one act of attempted penetration; (4) his conviction for home invasion must be vacated because it is a lesser-included offense of attempted aggravated criminal sexual assault based on home invasion; (5) his convictions must be reversed and the cause remanded for a fitness hearing because a 
bona fide
 doubt as to his fitness was raised; and (6) the cause must be remanded for proper admonishments pursuant to Supreme Court Rule 605(a) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a), eff. October 1, 2001).  

BACKGROUND

Defendant's convictions arose after he attempted to assault the 13-year-old victim, S.S., while she was alone at her foster mother's home on October 30, 1999.
  Defendant was charged with six offenses: two counts of home invasion, two counts of aggravated criminal sexual abuse, and two counts of attempted aggravated criminal sexual assault.  The State nol-prossed the second count of home invasion (alleging defendant entered S.S.'s dwelling place, when he "
had reason to know
 that one or more persons were present therein") and tried defendant on the first count of home invasion (alleging defendant entered S.S.'s dwelling place, when he "
knew
 that one or more persons were present therein") as well as the remaining offenses mentioned above.  (Emphasis added.)

Prior to trial, on November 13, 2000, defendant, who was represented by the public defender's office, moved for a behavioral clinical examination (BCX), which came back indicating he was fit to stand trial with medication.  A fitness hearing was later held on February 6, 2001, and the parties stipulated that Dr. Stafford Henry would testify that defendant was fit to stand trial with certain medications.  The trial court found defendant fit with medication.

On March 13, 2002, defense counsel advised the court that defendant had a "misfortune" over the weekend and that he had to "go to [the] psychiatric ward."  The trial court again ordered a BCX to determine defendant's fitness to stand trial and continued the matter.  Defendant's dissatisfaction with appointed counsel dominated the next several court proceedings.  At the April 19, 2002,  proceeding, defense counsel indicated that defendant has "previously had [two] examinations for fitness both of which found *** him fit for trial with medication," that "[h]e appears to be taking his medication," and that he wanted an attorney other than the public defender.  No further mention of the second BCX was made.

Defendant, represented by private counsel, was tried on August 22, 2003.  The victim testified that on October 30, 1999, at approximately 7:45 p.m., she was blow drying her hair in her rear bedroom while alone at her foster mother's apartment.  The victim's father had been visiting and reminded her to lock the door after him when he left.  The door, however remained unlocked, and 10 minutes after her father left, the victim heard the door slam.  The victim went to investigate and saw defendant.

Defendant approached the victim in the living room and told her that he would not hurt her.  Defendant then grabbed the victim, and she hit him in the face with an iron.  Defendant then threw her down and started to choke her.  Defendant ripped off her pants, lifted up her shirt and removed a "gun-knife" from his pocket.  Defendant licked the victim's breast, touched her vagina with his hands, and removed his penis from his pants.  At that moment, the victim's sister, Sarah S., and her foster mother returned from the grocery store.  Sarah S. threw a bag of eggs at defendant and defendant left.  The victim's foster mother called the police, and later that night, the victim identified defendant as the offender from the back of a squad car two blocks away from her home.

The victim initially thought defendant, who was standing next to the front door when she first saw him, was her father returning because "it was so dark" in the apartment.  The victim testified that the lighting in the apartment consisted of (1) a light in the kitchen, and (2) a light in the hallway.  The hallway, which was between the front door and a basement door, was small, and the light was "very dim."  The victim testified that "[i]f you're not standing there you can't see anything."  Although it was dim, the victim was able to see defendant's face while he was in the living room.

The victim also testified that the knife defendant possessed, which she called a "gun-knife" because its handle was the shape of a gun, was "tiny with a little knife extended right off it."  The knife, which "could be" a novelty, had a blade four to five inches "at the most."  It was not sharp and did not scare the victim.  The victim stopped moving when defendant pulled out the knife, and she was afraid of defendant choking her. 

The victim additionally testified that she had seen defendant one time before in the neighborhood but that she did not know him and never talked to him.  She also stated that she did not invite defendant into her home.  

Sarah S. testified that at about 7:45 p.m. on October 30, 1999, she returned home from the grocery store and was carrying a bag containing eggs.  When she entered her home from the front door, she saw defendant, whom she had seen once before, with his pants down.  She testified that the hallway and kitchen lights were on, and that the living and dining room lights were off.  Sarah S. tried to grab defendant and threw the bag at him.  The next day, Sarah S. identified defendant from a police lineup.

Chicago Police Officer Haywood, who arrived at the victim's house at approximately 7:55 p.m., testified  that he obtained a description of the offender from the victim, who was upset.  Officer Haywood then broadcast that description over his police radio.  The officer also observed defendant's knife, which he described as a pocket knife with a pistol handle and a two-inch-long blade.  Although Haywood testified he inventoried the knife, it was neither introduced at trial nor admitted into evidence.

Chicago Police Officer Montes received a "flash message" containing the description of the offender.  At 9:30 or 10 p.m., Montes saw defendant, who fit the description, walking alone about four blocks away from the victim's home.  Montes detained defendant and the victim identified him while the defendant was seated in the back of Montes' squad car.  

Chicago Police Detective Noflin testified that he conducted a lineup on October 31, 1999, from which Sarah S. identified defendant.  Noflin then spoke to defendant, and read him his 
Miranda
 rights.  Defendant told Noflin that "he was at the apartment visiting the victim but he did not recall what happened during this visitation."  When Noflin asked defendant if he knew the victim, defendant did not respond.

The State rested.  Defendant, after being admonished of his right to testify, rested without presenting any evidence.

The trial court found defendant guilty of all five counts.  The court found that the victim was "in the top five of the witnesses that have testified *** with regard to the issue of credibility," and that the State's other witnesses were also credible.  The court rejected defendant's arguments that he was misidentified as the offender and that he could not be guilty of home invasion where the door was unlocked.  The court also rejected defendant's argument that the knife was not a dangerous weapon.

At the next court proceeding, defense counsel moved for a BCX to determine defendant's fitness to be sentenced.  Counsel stated that information in defendant's presentence investigation report (PSI) was "very disturbing" and drew the court's attention to those parts that indicated defendant had been diagnosed with a mental illness, that he was taking medication including an anti-psychotic drug and an anti-depressant, that he has had "numerous head injuries," that he has had auditory and visual hallucinations, that he has had visions of shadows trying to suffocate him, and that he believed he was  "able to 'communicate out of his eyes' with the television."  The trial court noted that defendant had previously been found fit to stand trial, but ordered a BCX for fitness to be sentenced.

The matter was then delayed for several months while defendant received treatment for an illness.  On April 30, 2004, the court indicated that it had received a report from Forensic Clinical Services indicating defendant was fit for sentencing and was sane at the time of the offense, and an additional report from a licensed clinical psychologist indicating that defendant was sane at the time of the offense.  No fitness hearing was held.  

The parties then proceeded to defendant's motion for a new trial, which the trial court denied.  The court heard evidence in mitigation and aggravation and sentenced defendant as indicated above.  The court also advised defendant of his appellate rights but failed to specifically advise him that any issue omitted from his motion to reconsider sentence would be waived for purposes of appeal.

ANALYSIS

I

Defendant first contends that his conviction for home invasion must be reversed because the State failed to prove beyond a reasonable doubt that he knew one or more persons were present in the house, an element of the offense as charged in the indictment.  

When a defendant challenges the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Bush
, 214 Ill. 2d 318, 326, 827 N.E.2d 455 (2005) (
Bush
); 
People v. Collins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985) (
Collins
).  "Under this standard, a reviewing court must allow all reasonable inferences from the record in favor of the prosecution."  
Bush
, 214 Ill. 2d at 326, citing 
People v. Cunningham
, 212 Ill. 2d 274, 280, 818 N.E.2d 304 (2004).  A finding of guilt will only be disturbed where the evidence is so unreasonable, improbable or unsatisfactory that there is a reasonable doubt as to the defendant's guilt.  
Collins
, 106 Ill. 2d at 261; 
People v. Tackett
, 150 Ill. App. 3d 406, 412, 501 N.E.2d 891 (1986) (
Tackett
). 

Relevant to this case, the Illinois home invasion statute provides:

"(a) A person *** commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present *** and 

(1) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs[.]"  720 ILCS 5/12-11(a)(1) (West 1998).

"It is well established that '[i]n a prosecution for home invasion, knowledge may be proven by circumstantial evidence so long as the State presents sufficient evidence from which an inference of knowledge can be made.'"  
People v. Hickey
, 178 Ill. 2d 256, 292, 687 N.E.2d 910 (1997), quoting 
People v. Ramey
, 240 Ill. App. 3d 456, 462, 608 N.E.2d 512 (1992); 
Tackett
, 150 Ill. App. 3d at 420.  Although the statute provides that home invasion is committed where the defendant "knows or has reason to know" the dwelling place is occupied, in this case, count I charged that defendant "
knew
 that one or more persons were present" in the victim's home.  (Emphasis added.)  The State opted not to proceed on count II, which alleged defendant "
had reason to know
 that one or more persons were present." (Emphasis added.)  

The parties dispute whether the circumstantial evidence presented in this case was sufficient to prove defendant knew the house was occupied.  Defendant, relying on facts indicating the only lights on in the apartment were a "very dim" hall light and a kitchen light, argues the evidence failed to establish he "knew" the house was occupied.  Defendant argues that a dark house in the evening would suggest that nobody was home, and that because the victim's father had recently left, somebody watching the home could believe it was empty.  Further, the victim was in her bedroom when defendant entered, which she testified was at the far end of the apartment.  Defendant further asserts that no witnesses testified that he knew the house was occupied or that he had any information about the victim's apartment or family.

The State, on the other hand, points to defendant's statement to Detective Noflin that he was visiting the victim at her apartment and did not know what happened. The State also argues that because several lights were on in the victim's home, and because she was blow drying her hair, an activity that would include noise, defendant knew the apartment was occupied when he entered. 

We first address defendant's statement to Detective Noflin.  Defendant's statement  that he  was "visiting the victim" constitutes an admission that he knew at least one person, the victim, was present in the home when he entered.  Defendant's admission  could  therefore directly lead a rational trier of fact to infer that defendant knew one or more persons were present in the apartment that evening.

The circumstantial evidence presented in this case corroborated defendant's statement and was therefore sufficient to prove defendant's guilt.  In 
Tackett
, 150 Ill. App. 3d at 420, a case addressed by both parties, this court rejected the defendant's argument that the State failed to prove beyond a reasonable doubt that he "knew or had reason to know" that the house he and his accomplice entered was occupied.  Looking to circumstantial evidence, including that (1) the defendant entered the house at 1 a.m., "a time when it is likely that occupants of a residence would be at home
," (2) the defendant carried string with him in order to tie somebody up, and (3) the defendant likely saw the victim's car in the garage, this court found that the State proved the defendant's guilt beyond a reasonable doubt.  
Tackett
, 150 Ill. App. 3d at 420.  While in this case the State was required to prove that defendant knew that one or more persons were present, 
Tackett
 is instructive in demonstrating circumstantial evidence from which a defendant's knowledge may be inferred.   

In this case, the evidence showed that the offense occurred at 7:45 p.m, a time when individuals are less likely to be at work or at school, that a person recently left the house, that several lights were on in the house, and that the victim was engaging in the noisy activity of blow drying her hair.  See 
People v. Frisby
, 160 Ill. App. 3d 19, 31, 512 N.E.2d 1337 (1987) (a light on in the room the intruder first enters and noise from a radio is indicative of a defendant's knowledge that the house is occupied).  This circumstantial evidence, combined with the direct evidence elicited through defendant's admission, was sufficient to prove defendant's knowledge. 

II

Defendant next contends that the State failed to prove beyond a reasonable doubt that the knife he possessed constituted a "dangerous weapon."  He therefore contends his home invasion conviction should be reversed, his aggravated criminal sexual abuse convictions should be reduced to criminal sexual abuse, and his attempted aggravated criminal sexual assault convictions should be reduced to attempted criminal sexual assault.  He additionally maintains that this court should remand his case for resentencing on the lesser offenses.  

As discussed above, the issue on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Bush
, 214 Ill. 2d at 326.  The defendant's conviction will only be set aside if the evidence is so improbable or unsatisfactory that there is a reasonable doubt of his or her guilt.  
Collins
, 106 Ill. 2d at 261.

In this case, defendant's possession of a dangerous weapon, the knife, was an element of all offenses as charged.  The term "dangerous weapon," however, is not defined by any of the offenses of which defendant was convicted.  

Whether a particular object qualifies as a dangerous weapon depends upon the character of that object and is usually a question for the finder of fact to be determined based on the totality of the circumstances.  
People v. Charles
, 217 Ill. App. 3d 509, 512-13, 514, 577 N.E.2d 534 (1991) (
Charles
).  Where the statute involved does not define what constitutes a dangerous weapon, courts divide objects into four categories: (1) those, such as loaded guns and knives, that are dangerous 
per se
; (2) those that are never dangerous, such as a four-inch plastic toy gun; (3) those that are not necessarily dangerous but may be so used, such as an unloaded gun or a toy gun made of heavy materials; and (4) those that are not necessarily dangerous, but were used in a dangerous manner.  
People v. Thorne
, 352 Ill. App. 3d 1062, 1070-71, 817 N.E.2d 1163 (2004) (
Thorne
). 

Defendant argues that the fact finder must take into consideration the victim's subjective belief in determining whether an object is "dangerous."   He asserts the victim testified that the knife was "tiny," not sharp, possibly a novelty, and that she was not afraid of it.  Further, defendant points out that the judge never viewed the knife, as the State failed to introduce it into evidence.

In this case, defendant possessed a knife, a 
per se
 dangerous weapon under 
Thorne
.  We reject defendant's contention that 
Thorne
 is limited to the armed robbery statute, the statute at issue in that case, as there is no indication that such a limitation is intended.  Additionally, the cases upon which defendant primarily relies, including 
Charles
, 217 Ill. App. 3d at 509, and 
People v. Guzman
, 276 Ill. App. 3d 750, 658 N.E.2d 1268 (1995) (
Guzman
), do not involve home invasion or aggravated criminal sexual abuse.  Thus, under defendant's reasoning, neither 
Charles
 nor 
Guzman
 would have any bearing on his convictions for those offenses.  We further find that under 
Thorne
, the victim's subjective belief need not be taken into account. 

Defendant also argues that although 
Thorne
 classifies guns and knives as "dangerous 
per se
," its actual holding is that the gun in that case, a BB gun, was not a dangerous weapon.  What defendant fails to point out is that 
Thorne
 says a loaded gun is a 
per se
 dangerous weapon
, and there was no evidence in that case that the BB gun was loaded.  
Thorne
, 352 Ill. App. 3d at 1072.

Additionally, 
Charles
  actually belies defendant's position.  In that case, this court rejected the defendant's argument that his aggravated criminal sexual assault conviction should be reduced because the knife he used did not constitute a dangerous weapon.  Similar to this case,  the victim in 
Charles
 testified she was "not as much afraid of the knife as she was afraid of [the] defendant."  
Charles
, 217 Ill. App. 3d at 511-12.  Further, the victim in that case only saw the knife, which had a 1 ½-inch blade, for less than a minute.  Defendant argues 
Charles
 stands for the proposition that an object used in an aggravated criminal sexual assault must be used in a dangerous manner.  Defendant asserts that in 
Charles
 the defendant threatened to cut the victim "into little pieces" (
Charles
, 217 Ill. App. 3d at 511), while defendant in this case told the victim he would not hurt her.  This argument fails, as presenting a knife and choking the victim negated defendant's representation that he would not hurt her, and defendant, by attempting to sexually assault the victim, surely did plan on hurting her.  

The issue of whether the knife constituted a "dangerous weapon" was properly left to the trier of fact, the trial judge, who reasonably found:

"And I don't know if it's suggested that because this knife had a handle that appeared to be a gun, had it been suggested that that is some type of novelty which would suggest to me that it's some type of toy, well, it's this Court's opinion as a finder of fact that a two-inch blade isn't a toy, that a two-inch blade inserted into a human being's body at a strategic location certainly could result in bodily harm, if not death, therefore, I find that weapon as described by [the victim] and the officer to be a dangerous weapon." 

The evidence presented supporting this conclusion is not so improbable or unsatisfactory that the trial court's determination should be set aside.  We therefore conclude the State proved beyond a reasonable doubt that the knife was a dangerous weapon.

III

Defendant's next contention is that one of his convictions for attempted aggravated criminal sexual assault must be vacated under the one-act, one-crime rule of 
People v. King
, 66 Ill. 2d 551, 566, 363 N.E.2d 838 (1977), because there was only one act of attempted penetration.  

Defendant was convicted of attempted aggravated criminal sexual assault as alleged in both count V and count VI of the indictment.  Both provide that defendant "with the intent to commit the offense of aggravated criminal sexual assault, did any act, to wit: [defendant] grabbed [S.S.], displayed a knife, and removed [her] clothing and attempted to place his penis in her vagina."  The aggravating factors, however, differed: count V alleged only that defendant displayed a knife (720 ILCS 5/12-14(a)(1) (West 1998)), while count VI alleged that the act of attempted penetration was committed during the commission of another felony, home invasion (720 ILCS 5/12-14 (a)(4) (West 1998)). 

The State concedes that only one act of attempted penetration occurred; what the parties dispute is the remedy.  Defendant argues that this court must vacate one of his attempted aggravated criminal sexual assault convictions and remand for a new sentencing hearing "so that the judge can consider the proper amount of convictions when sentencing [him]."  However, we agree with the State's contention that under 
People v. Eubanks
, 279 Ill. App. 3d 949, 963, 665 N.E.2d 464 (1996), it retains the right to elect which conviction should be retained.  We therefore accept the State's election that count V, premised on the use of a weapon, be retained, and count VI, premised on home invasion, be vacated. 

We additionally note that generally, when multiple convictions are obtained for offenses arising from a single act, sentence is imposed on the most serious offense.  
People v. Cardona
, 158 Ill. 2d 403, 411, 634 N.E.2d 720 (1994).  In 
People v. Garcia
, 179 Ill. 2d 55, 688 N.E.2d 57 (1997) (
Garcia
), the case upon which defendant relies, the court remanded to the trial court for a determination of upon which of the defendant's three convictions for aggravated criminal sexual assault (based on use of a dangerous weapon, bodily harm, and threatening the victim) he should be sentenced.  Remand was appropriate in 
Garcia
 because there was no way for the court to determine the more serious offense.  
Garcia
, 179 Ill. 2d at 71.

In 
People v. Daniels
, 331 Ill. App. 3d 380, 386-87, 770 N.E.2d 1143 (2002) (
Daniels
), a panel of this court discussed 
Garcia
, but did not remand the defendant's cause for resentencing where he had been improperly convicted of two counts of aggravated criminal sexual assault based on one act of penetration.  The aggravating factors in 
Daniels
 were (1) display of a dangerous weapon, and (2) bodily harm to the victim.  The court held that because an assault involving bodily harm to the victim is a more serious offense than an assault displaying a dangerous weapon, 
Garcia
 was distinguishable and remand was unnecessary.  We note that in 
People v. Rodriguez
, 169 Ill. 2d 183, 190, 661 N.E.2d 305 (1996) (
Rodriguez
), our supreme court held that an aggravated criminal sexual assault involving the display or threat of use of a dangerous weapon is a more serious offense than an assault involving home invasion.  

Reading 
Daniels
 and 
Rodriguez
 together leads us to conclude that count V (display of a weapon) is a more serious offense than count VI (home invasion) and that remand under 
Garcia
 is unnecessary.  We therefore vacate defendant's conviction under count VI, attempted aggravated criminal sexual assault based on home invasion.

IV

Defendant next contends that his conviction for home invasion must be vacated because it is a lesser-included offense of attempted aggravated criminal sexual assault based on home invasion under the one-act, one-crime doctrine.  In light of our prior discussion in which we held that defendant's conviction for attempted aggravated criminal sexual assault based on home invasion must be vacated, we need not address this contention. 

V

Defendant contends that his convictions should be reversed and the cause remanded for a fitness hearing because there was a 
bona fide
 doubt as to his fitness to stand trial or to be sentenced. 

Due process requires that a defendant be fit in order to be tried or sentenced.  
People v. Hanson
, 212 Ill. 2d 212, 218, 817 N.E.2d 472 (2004) (
Hanson
).  A defendant is presumed to be fit to stand trial or to be sentenced; however, once a 
bona fide
 doubt of the defendant's fitness is raised, a fitness hearing must be held.  
People v. Eddmonds
, 143 Ill. 2d 501, 512, 578 N.E.2d 952 (1991) (
Eddmonds
).  While defendant advocates for 
de novo
 review, the trial court's determination of 
bona fide
 doubt is left to its discretion.  
Hanson
, 212 Ill. 2d at 222.  

The trial court's grant of a defendant's request for a fitness hearing does not necessarily mean it found a 
bona fide
 doubt of the defendant's fitness.  
Hanson
, 212 Ill. 2d at 222.  Rather, a defendant's fitness may be determined by a number of factors, including (1) the rationality of the defendant's behavior and demeanor at trial, (2) counsel's statements concerning the defendant's competence, and (3) any prior medical opinions on the issue of the defendant's fitness.  
Hanson
, 212 Ill. 2d at 223, citing 
Eddmonds
, 143 Ill. 2d at 518.  

Defendant acknowledges that one fitness hearing was held on February 6, 2001, prior to trial.  However, he argues the trial court did not fulfill its obligation to hold a hearing when his fitness was again raised by defense counsel on March 13, 2002 (prior to trial), and prior to sentencing, when his PSI indicated he suffered hallucinations and believed he had the ability to communicate through the television with his eyes.  While fitness evaluations were performed following these two latter instances finding defendant fit, defendant argues 
bona fide
 doubt was raised warranting a fitness hearing.  Defendant points to several factors, in addition to those mentioned above, including that he spent time in the psychiatric ward, that he believed shadows would suffocate him, that he was the victim of a sexual assault, and that he received psychotropic medication.

Defendant cannot show the trial court abused its discretion in failing to hold additional fitness hearings.  Significantly, at each instance defense counsel raised the issue of defendant's fitness, a fitness examination was ordered.  Each concluded that defendant was fit to stand trial or to be sentenced.  

This court must consider what was known to the trial court at the time the fitness issue was raised.  
Eddmonds
, 143 Ill. 2d at 514.  Here, the majority of factors defendant cites were not known until defendant's PSI was completed following trial.  Thus, defendant cannot establish 
bona fide
 doubt as of March 2002. 

Additionally, there was no 
bona fide
 doubt of defendant's fitness to be sentenced.  Applying the 
Eddmonds
 factors, we find that defendant was again examined pursuant to counsel's request and was again found fit.  Counsel accepted these findings and did not press the issue.  While it is difficult to ascertain defendant's demeanor from the appellate record, the record does not contain any indication that defendant was behaving irrationally at the time he was sentenced.  Therefore, as there was no 
bona fide
 doubt of defendant's fitness at the time he was sentenced, no fitness hearing was required, and reversal of defendant's convictions is unnecessary. 

VI

Defendant's final contention is that his case must be remanded for proper admonishments pursuant to Supreme Court Rule 605(a) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a), eff. October 1, 2001) because the trial court failed to admonish him that any issue not included in his motion to reconsider sentence would be waived for purposes of appeal.

In 
People v. Henderson
, No. 98887, slip op. at 13 (August 18, 2005) (
Henderson
), our supreme court held that "where a defendant is given incomplete Rule 605(a) admonishments regarding the preservation of sentencing issues for appeal, remand is required only where there has been prejudice or a denial of real justice as a result of the inadequate admonishment."  The court found that because the defendant in 
Henderson
 had not raised any sentencing issues on appeal, he was neither prejudiced nor denied real justice by the incomplete admonishments.  
Henderson
, slip op. at 15-16.  Therefore, remand for proper admonishments in that case was unnecessary.  

As defendant in this case concedes that "he has not raised a specific sentencing issue on appeal," he similarly cannot show he was prejudiced or denied real justice.
  Remand for proper admonishments is therefore unnecessary.

CONCLUSION

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed in part and vacated in part.

Affirmed in part and vacated in part. 

HOFFMAN, P.J., and THEIS, J., concur.