FIFTH DIVISION
September 21, 2007

No. 1-04-3686

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| CALVIN RICHARDSON, | ) | Honorable |
| | ) | James R. Epstein, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GALLAGHER delivered the opinion of the court:

Following a bench trial, defendant Calvin Richardson was convicted of burglary and was sentenced to eight years in prison. On appeal, defendant contends that his trial counsel was ineffective in failing to move to suppress evidence obtained when police effectuated a *Terry* stop. Defendant also asks this court to remand his case to the trial court for a new fitness hearing because he was not admonished of his right to confront witnesses. In addition, defendant challenges the trial court's order that he provide a sample for inclusion in DNA identification databases.

The Illinois Supreme Court has directed us to vacate our previous Rule 23 order and reconsider this case in light of *People v. Luedemann*, 222 Ill. 2d 530, 857 N.E.2d 187 (2006).

Because, upon reconsideration, we conclude that a motion to suppress likely would not have succeeded, we affirm defendant's conviction. We also reject defendant's additional contentions on appeal.

BACKGROUND

At trial, Stanley Puchalski testified that on the morning of December 30, 2003, he was employed by Why Not Iron, a company that specialized in ornamental and architectural ironwork. Puchalski testified that while completing a job at 1621 North Kenton, he went to his van at about 11:20 a.m. to find that it had been broken into and two of his toolboxes were gone.

Chicago police officer William Lehner testified that at about 11:25 a.m. on December 30, 2003, he and his partner observed defendant walking near 4609 West Grand Avenue carrying a power tool case in each hand. The officers were in plain clothes and driving an unmarked vehicle traveling in the opposite direction that defendant was walking.

Officer Lehner testified that after he observed defendant carrying the cases, he turned his vehicle around and pulled to the curb near defendant. As the officers got out of the car, defendant set the cases down on the ground and approached them. The officer further testified:

"Q. When the defendant came over to your vehicle, what happened?

A. I questioned him as to what he had in the cases and what they were.

Q. What did he tell you?"

1-04-3686

The trial court sustained a defense objection to Officer Lehner's answer to that question and the officer was asked the question again:

"Q. Specifically what did he say, officer?

A. At first he stated that those were tools and they belonged to his dad. Then we asked again, and he stated he got them from his friend's house by Kostner and Division. Then he stated that they were his. Then after I asked him what kind of tools they were, he stated several different types of tools.

Q. Did you ask him what kind?

A. Yes, I did.

Q. What did he say?

A. He couldn't exactly state what they were. He didn't know."

Officer Lehner stated that he then noticed the letters WNI on the cases and asked defendant what those markings meant. Defendant did not respond; the officer stated it was "like [defendant] didn't know what I was talking about." Officer Lehner opened the cases and found an invoice bearing the company name of Why Not Iron. The officers arrested defendant and transported him to the station, where he admitted that he stole the tools for money to buy drugs. On cross-examination, Officer Lehner stated that during their conversation on the street, he asked defendant two or three times where he got the tools and that the questioning lasted one or two minutes. The defense presented no testimony.

After the trial court found defendant guilty of burglary, the court held a hearing on

3

defendant's fitness to be sentenced, at which the parties stipulated that a staff psychiatrist for Forensic Clinical Services observed defendant and would testify to a reasonable degree of medical and psychiatric certainty that defendant was fit for sentencing while taking certain medications. The court found defendant fit for sentencing and imposed a term of eight years in prison. In addition, the court ordered defendant to submit a sample of blood, saliva or tissue for inclusion in a DNA database pursuant to section 5-4-3 of the Unified Code of Corrections (730 ILCS 5/5-4-3 (West 2004)).

ANALYSIS

I. Effectiveness of Trial Counsel

On appeal, defendant first contends that he received ineffective assistance of trial counsel because his attorney did not move to suppress the contents of the toolboxes or his incriminating statements to police. He argues that his most promising defense involved the exclusion of that evidence, and he asserts his trial counsel did not follow a sound trial strategy by failing to move to suppress that evidence.

To support a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and, furthermore, that counsel's actions resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). We note that counsel's decision not to file a motion to suppress evidence involves trial strategy and therefore is generally beyond the scope of appellate review. *People v. Medrano*, 271 Ill. App. 3d 97, 101, 648 N.E.2d 218, 222

4

1-04-3686

(1995). In determining whether a defendant suffered substantial prejudice in a situation involving a motion to suppress, a reviewing court considers whether a reasonable probability exists that: (1) the motion to suppress would have been granted; and (2) the outcome of the trial would have been different had the evidence been suppressed. *People v. Orange*, 168 Ill. 2d 138, 153, 659 N.E.2d 935, 942 (1995).

Defendant argues that a motion to suppress likely would have succeeded because the officers lacked a reasonable suspicion to stop and question him and, furthermore, because the officers lacked probable cause to search the toolboxes. Moreover, defendant asserts that because his most viable defense was the suppression of the contents of the tool cases and the suppression of his inculpatory statements, he would not have been convicted absent that evidence.

The fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution protect citizens from unreasonable searches and seizures by the government. U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, §6. Three types of police-citizen interaction are not considered seizures under the fourth amendment: (1) an arrest, which must be supported by probable cause; (2) brief investigative detentions, or *Terry* stops, which must be accompanied by a reasonable, articulable suspicion of criminal activity; and (3) "encounters that involve no coercion or detention and thus do not implicate fourth amendment interests." *Luedemann*, 222 Ill. 2d at 544, 857 N.E.2d at 196.

In its recent opinion in *Luedemann*, the Illinois Supreme Court analyzed what it termed the historically "imprecise" classification of the third tier of police-citizen encounters as "community caretaking." *Luedemann*, 222 Ill. 2d at 544, 857 N.E.2d at 196. Abrogating its

5

decisions in *People v. White*, 221 Ill. 2d 1, 21, 849 N.E.2d 406, 418 (2006), and other cases, the supreme court clarified the difference between a consensual officer-citizen encounter and a police act of "community caretaking," which involves the performance of a "task unrelated to the investigation of crime." *Luedemann*, 222 Ill. 2d at 545, 857 N.E.2d at 197; see also *People v. Robinson*, 368 Ill. App. 3d 963, 973-74, 859 N.E.2d 232, 243-44 (2006) (noting *Luedemann*'s analysis and finding that a police officer's "well-being" check of defendant, who was slumped over the steering wheel, was not initiated to detect, investigate or acquire evidence, and thus constituted "community caretaking," although the officer's subsequent observations supported DUI charge). The supreme court in *Luedemann* thus distinguished "community caretaking" from a consensual encounter between a police officer and a citizen. *Luedemann*, 222 Ill. 2d at 548, 857 N.E.2d at 198-99.

In the instant case, when the officers stopped their vehicle at the curb and got out, defendant put the tool cases down on the ground and approached the officers. The parties agree that the initial contact was a consensual encounter, which does not implicate the fourth amendment. See *Luedemann*, 222 Ill. 2d at 544, 857 N.E.2d at 196; see also *People v. Gherna*, 203 Ill. 2d 165, 177, 784 N.E.2d 799, 806 (2003). "[N]ot every encounter between the police and a private citizen results in a seizure." *Luedemann*, 222 Ill. 2d at 544, 857 N.E.2d at 196, citing *Immigration & Naturalization Service v. Delgado*, 466 U.S. 210, 215, 80 L. Ed. 2d 247, 254, 104 S. Ct. 1758, 1762 (1984). "The fourth amendment was not intended to prevent consensual encounters between the police and citizens. Thus, a police officer may approach a person on the street and ask questions if that person is willing to listen." *People v. Tate*, 367 Ill.

6

App. 3d 109, 114, 853 N.E.2d 1249, 1254 (2006).

Before we examine the next step of the encounter, this court wishes to clarify its previous characterization of the police officers' act of curbing their vehicle near defendant. It might be implied from this court's original order that the officers required a reasonable suspicion of criminal activity at the outset of their interaction with defendant, which suggested that defendant was seized at that point. We do not hold that the officers performed a *Terry* stop of defendant by pulling their car to the curb in defendant's vicinity. Indeed, such a stop would be without basis, because, as this court noted, the sight of a person walking down the street carrying toolboxes does not support an objectively reasonable suspicion of criminal activity. Rather, we focus on the conversation between defendant and the officers after the officers got out of their car.

Defendant contends that he was seized when the officers refused to accept his initial answer that his father owned the toolboxes and that the officers did not have facts, at that time, to justify an investigatory stop. The State asserts that police questioning of a citizen does not violate the fourth amendment and that defendant's inconsistent and conflicting answers led the officer to open the boxes and study the contents, thus establishing not only reasonable suspicion but providing the officers with probable cause to arrest. The State argues that defendant's responses to Officer Lehner's questions "heightened" the officer's suspicions about the toolboxes, which the State points out were "professional-grade boxes" that bore a company logo.

Because defendant raises the issue of the requirement for a *Terry* stop, we set out that standard, though we do not determine such a stop initially occurred in this case. A police officer may detain a person without having probable cause to arrest; however, the officer must have a

reasonable, articulable suspicion that the person has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Thus, under *Terry*, an officer may "briefly stop a person for temporary questioning if the officer has knowledge of sufficient articulable facts at the time of the encounter to create a reasonable suspicion that the person in question has committed or is about to commit a crime." *People v. Lee*, 214 Ill. 2d 476, 487, 828 N.E.2d 237, 246 (2005).

Our attempt to accurately examine the brief encounter between defendant and the officers is limited by the facts that were presented at trial. Defendant offered inconsistent responses to the officers' questions about the contents of the tool boxes. According to Officer Lehner (the only witness presented by the State other than the complainant), defendant first stated that the tools belonged to his father. Defendant then stated that the tools belonged to a friend, and then said they were his. Defendant also was unable to explain the initials on the boxes or state what kind of tools the boxes contained. In addition, as we noted in our original order, the State presented no testimony or evidence of facts known to the officers at the outset of the conversation with defendant, such as a report of stolen tools or a physical description of a suspect.

Defendant argues that the encounter became a seizure during the conversation when the officers' questioning persisted and, in defendant's words, became "accusatory and adversarial." However, the United States Supreme Court has held that police questioning, in and of itself, does not constitute a seizure. *Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991); *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983). More precisely, the Court has stated:

"[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." *Royer*, 460 U.S. at 497, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324.

A police-citizen encounter remains consensual as long as a reasonable person would feel free " 'to disregard the police and go about his business.' " *Bostick*, 501 U.S. at 434, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386, quoting *California v. Hodari D.*, 499 U.S. 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991).[1] Indeed, as *Luedemann* emphasized, "the police may do more than merely ask questions without turning the encounter into a seizure"; officers may examine identification and request consent to search luggage. *Luedemann*, 222 Ill. 2d at 551, 857 N.E.2d at 200, citing *Bostick*, 501 U.S. at 434-35, 115 L. Ed. 2d at 398-99, 111 S. Ct. at 2386. See also *People v. Croft*, 346 Ill. App. 3d 669, 674, 805 N.E.2d 1233, 1239 (2004) (investigative questioning by police does not automatically establish that an individual is seized); *People v. Erby*, 213 Ill. App. 3d 657, 662, 572 N.E.2d 345, 348 (1991) ("[a] person voluntarily cooperating with the police is not seized for fourth amendment purposes").

---

[1] Defendant argues that he did not feel free to leave the scene after Officer Lehner "refused to accept [his] initial answer as satisfactory." However, whether a reasonable person would have felt free to leave hinges on an objective evaluation of the police conduct and not on the subjective perception of the individual approached. *Luedemann*, 222 Ill. 2d at 551, 857 N.E.2d at 200; see also *Hodari D.*, 499 U.S. at 628, 113 L. Ed. 2d at 698, 111 S. Ct. at 1551.

1-04-3686

At oral argument upon this court's reconsideration of this case in light of *Luedemann*, defendant's counsel asserted that the officers should have accepted defendant's initial response to the question of what the boxes contained and to whom they belonged. In effect, defendant contends that the officers were required to accept his first answer to their inquiry and end the conversation. However, we cannot agree with defendant's position that what occurred after his first answer to the officer's questioning constituted a seizure under the fourth amendment.

Conflicting or evasive responses to police questioning can constitute probable cause to arrest the person being questioned "when considered together with the prior suspicions." 2 W. LaFave, Search & Seizure §3.6(f), at 362 (4th ed. 2004). Professor LaFave cites *United States ex rel. Kirby v. Sturges*, 510 F.2d 397 (7th Cir. 1975), in which the suspect offered different, contradictory explanations for his possession of travelers' checks, first stating that they were play money and then saying he had won them by gambling. "The court concluded that while 'the possession of property bearing someone else's name would not constitute probable cause,' grounds for arrest came into existence when the suspect 'gave two contradictory explanations.' " 2 W. LaFave, Search & Seizure, §3.6(f) at 362 (4th ed. 2004). See also *United States v. Garcia*, 179 F.3d 265 (5th Cir. 1999); *United States v. Tudoran*, 476 F. Supp. 2d 205, 213 (N.D. N.Y. 2007) (citing numerous federal cases and discussing factors probative of the existence of probable cause, including "implausible, conflicting, evasive or unresponsive answers to questions").

To hold, as defendant contends, that an individual is seized after his or her first response to police questioning would be illogical in light of the cases that discuss the fourth amendment implications of conflicting responses and "investigative questioning." Conflicting responses could

10

not occur without the presentation of multiple inquiries, because an answer to one question cannot be described as conflicting or inconsistent unless it is compared to another answer. Likewise, what courts have termed "investigative questioning" implies repeated inquiries, not a single question and answer. Therefore, contrary to defendant's contention, an individual is not seized when a police officer asks more than one question.

We observe that the Supreme Court's holdings on this topic, along with the federal and state cases we have found, use the plural, as opposed to the singular, when referring to the allowable number of police inquiries that can be made before a person is considered seized under the fourth amendment. "Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few *questions*." (Emphasis added.) *Bostick*, 501 U.S. at 434, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386; *Royer*, 460 U.S. at 497, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324 (quoted above). See also *State v. Yoder*, 935 P.2d 534, 542 (Utah App. 1997) (defendant's "uncooperative, false and evasive" *responses* taken in to account); *State v. Nguyen*, 878 P.2d 1183, 1187 (Utah App. 1994) ("false or evasive" *answers* along with highly suspicious behavior may be used to establish probable cause).

Probable cause for an arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested committed the offense. *Gerstein v. Pugh*, 420 U.S. 103, 111-12, 43 L. Ed. 2d 54, 64, 95 S. Ct. 854, 862 (1975). "Probable cause does not require evidence sufficient to convict, but it requires more than articulable suspicion." *People v. Mata*, 178 Ill. App. 3d 155, 161, 533 N.E.2d 370, 375 (1988).

11

1-04-3686

It is true that, here, the officers were not even aware that a crime had been committed and thus, of course, had no description of a suspect when they saw defendant walking down the street. However, the police "need not have actual knowledge of a criminal violation before they can effect an arrest if the facts of the case give rise to a reasonable belief that a crime has been committed." *Mata*, 178 Ill. App. 3d at 161, 533 N.E.2d at 375 (also noting that officers "often must act upon a quick appraisal of the data before them").

Officer Lehner testified that defendant set the toolboxes on the ground and approached the officers when he saw the police car stop near him. Defendant then gave conflicting answers to the questions asked and could not identify the contents of the toolboxes he carried. The officers did not violate the fourth amendment by asking defendant multiple questions and eliciting his voluntary answers, which were inconsistent. Such conflicting responses to police questioning, together with the totality of the circumstances, gave rise not only to a reasonable suspicion of criminal activity, but gave the officers probable cause to arrest. Accordingly, defense counsel was not ineffective for failing to file a motion to suppress evidence, given that such a motion lacked a reasonable chance of success.

## II. Stipulated Testimony at Hearing on Defendant's Fitness for Sentencing

After defendant's conviction, the trial court held a hearing on his fitness to be sentenced. The hearing consisted solely of the stipulated testimony of the State's psychiatrist that defendant was fit for sentencing with medications. Defendant now asserts that his case should be remanded for a new fitness hearing because the court was required to admonish him as to the effect of the

stipulation and ascertain that defendant knew he was waiving his right to present witnesses. He contends those steps were required under *People v. Campbell*, 208 Ill. 2d 203, 221, 802 N.E.2d 1205, 1215 (2003), which we discuss in further detail below.

Defendant repeatedly refers to the applicability of due process to fitness hearings, and the cases that he cites discuss due process requirements in relation to a defendant's fitness to stand trial. Due process bars the criminal prosecution or sentencing of a defendant who is not competent to stand trial. *People v. Woodard*, 367 Ill. App. 3d 304, 319, 854 N.E.2d 674, 689 (2006); *People v. McColler*, 363 Ill. App. 3d 81, 92, 842 N.E.2d 193, 202 (2005). Therefore, the same due process requirements that apply to a defendant's fitness to stand trial also apply to his fitness to be sentenced.

We note, however, that defendant's arguments involve a stipulation about his fitness to be sentenced, while *Campbell* did not involve a fitness issue. In that case, the Illinois Supreme Court addressed the ability of defense counsel to waive a defendant's sixth amendment right of confrontation by stipulating to the admission of evidence at trial. *Campbell*, 208 Ill. 2d at 221, 802 N.E.2d at 1215. The defendant in *Campbell* was charged with the residential burglary of the apartment of several college students. *Campbell*, 208 Ill. 2d at 207, 802 N.E.2d at 1206-07. One of the students testified at trial, and when his roommate did not appear to testify, defense counsel agreed to the roommate's stipulated testimony. *Campbell*, 208 Ill. 2d at 208, 802 N.E.2d at 1207-08.

On appeal, the defendant in *Campbell* argued that because defense counsel stipulated to the roommate's testimony without his knowing consent, he was denied his constitutional right to

13

confront witnesses against him. *Campbell*, 208 Ill. 2d at 209, 802 N.E.2d at 1208. The defendant contended that only he, as the accused, could waive his right to confrontation. *Campbell*, 208 Ill. 2d at 209, 802 N.E.2d at 1208. The supreme court reviewed several federal and state cases in which defense counsel was allowed to waive a defendant's right to confrontation if the decision amounted to trial strategy and the defendant did not object to the stipulation. *Campbell*, 208 Ill. 2d at 215, 802 N.E.2d at 1211-12. In accordance with most of those decisions, *Campbell* held that the defendant must be admonished and agree to a stipulation to the admission of evidence where: (1) the stipulation includes a statement that the evidence is sufficient to convict the defendant; or (2) the State's entire case is to be presented by stipulation. *Campbell*, 208 Ill. 2d at 221, 802 N.E.2d at 1215. The supreme court concluded that defense counsel's stipulation to the roommate's testimony presented a reasonable explanation for the defendant's entry into the apartment, and therefore the attorney's agreement to stipulate to the testimony was trial strategy. *Campbell*, 208 Ill. 2d at 220-21, 802 N.E.2d at 1214-15.

Defendant contends that *Campbell* was violated because his "entire fitness hearing" was stipulated without an admonition from the court that he understood the consequences of the stipulation and agreed to waive his right to present testimony.[2] Defendant urges this court to extend *Campbell*'s holding to fitness hearings. He asserts that the supreme court in *Campbell* did not limit its decision to the guilt or innocence phase of a trial "where a stipulation is tantamount to a guilty plea."

---

[2] Defendant acknowledges that he did not object to this procedure in the trial court but asks this court to consider his position under the plain error doctrine.

It is without question that a defendant has a fundamental right to confront witnesses against him. See *Campbell*, 208 Ill. 2d at 211, 802 N.E.2d at 1209-10. However, a fitness hearing "is not part of the legal proceedings by which the accused's liability for an offense is determined." *People v. McCullum*, 66 Ill. 2d 306, 312, 362 N.E.2d 307, 310 (1977). Indeed, in urging us to follow *Campbell*, defendant cites no cases that involve stipulations to a defendant's fitness to either stand trial or be sentenced. We do not agree with defendant's contention that the right to confrontation discussed in *Campbell* applies to fitness hearings.

Furthermore, the stipulation regarding defendant's fitness complied with the existing standard. A trial court may rely on stipulated testimony regarding a defendant's fitness, although the court cannot blindly defer to an expert's opinion. *People v. Goodman*, 347 Ill. App. 3d 278, 287, 806 N.E.2d 1124, 1132 (2004). "The parties may stipulate to what an expert *would testify* [as to a defendant's fitness], but they may not stipulate to an expert's *conclusions* regarding fitness." (Emphasis added.) *Goodman*, 347 Ill. App. 3d at 287, 806 N.E.2d at 1132; see also *People v. Lewis*, 103 Ill. 2d 111, 116, 468 N.E.2d 1222, 1225 (1984); *People v. Greene*, 102 Ill. App. 3d 639, 643, 430 N.E.2d 219, 222 (1981). Here, the parties stipulated that the psychiatrist would testify that defendant was fit for sentencing.

### III. Constitutionality of DNA Statute

Defendant argues that the compulsory extraction of his DNA pursuant to section 5-4-3 of the Unified Code of Corrections (730 ILCS 5/5-4-3 (West 2002)) violates his fourth amendment right to be free of unreasonable searches and seizures. However, in the time since defendant

15

1-04-3686

asserted that argument, it has been addressed by the Illinois Supreme Court in *People v. Garvin*, 219 Ill. 2d 104, 847 N.E.2d 82 (2006), which upheld the statute's constitutionality.

CONCLUSION

In summary, we hold that because a motion to suppress likely would not have succeeded, defendant's trial counsel was not ineffective. We also find defendant's remaining contentions to be unavailing. Accordingly, defendant's conviction is affirmed.

Affirmed.

O'MARA FROSSARD, J., concurs.

O'BRIEN, J., dissents.

16

1-04-3686

JUSTICE O'BRIEN, dissenting:

We got it right the first time.

I adopt our original order, which we withdrew after the Supreme Court issued its supervisory order, as my dissent.

Following a bench trial, defendant Calvin Richardson was convicted of burglary and was sentenced to eight years in prison. On appeal, defendant contends that his trial counsel was ineffective in failing to move to suppress evidence that police obtained during a *Terry* stop. Defendant also asks this court to remand his case to the trial court for a new fitness hearing because he was not admonished of his right to confront witnesses. In addition, defendant challenges the trial court's order that he provide a sample for inclusion in DNA identification databases. Because we conclude that a motion to suppress likely would have succeeded because police lacked a reasonable articulable suspicion of criminal activity, we reverse defendant's conviction and sentence and remand to the trial court.

At trial, Stanley Puchalski testified that on the morning of December 30, 2003, he was employed by Why Not Iron, a company that specialized in ornamental and architectural ironwork. Puchalski testified that while completing a job at 1621 North Kenton, he went to his van at about 11:20 a.m. to find that it had been broken into and two of his tool boxes were gone.

Chicago Police Officer William Lehner testified that at about 11:25 a.m. on December 30, 2003, he and his partner observed defendant walking near 4609 West Grand Avenue carrying a power tool case in each hand. The officers were in plain clothes and driving an unmarked vehicle traveling in the opposite direction that defendant was walking.

-17-

Officer Lehner testified that after he observed defendant carrying the cases, he turned his vehicle around and pulled to the curb near defendant. As the officers got out of the car, defendant set the cases down on the ground and approached them. The officer further testified:

"Q. When the defendant came over to your vehicle, what happened?

A. I questioned him as to what he had in the cases and what they were.

Q. What did he tell you?"

The trial court sustained a defense objection to Officer Lehner's answer to that question and the officer was asked the question again:

"Q. Specifically what did he say, officer?

A. At first he stated that those were tools and they belonged to his dad. Then we asked again, and he stated he got them from his friend's house by Kostner and Division. Then he stated that they were his. Then after I asked him what kind of tools they were, he stated several different types of tools.

Q. Did you ask him what kind?

A. Yes, I did.

Q. What did he say?

A. He couldn't exactly state what they were. He didn't know."

Officer Lehner stated that he then noticed the letters WNI on the cases and asked defendant what those markings meant. Defendant did not respond; the officer stated it was "like [defendant] didn't know what I was talking about." Officer Lehner opened the cases and found an invoice bearing the company name of Why Not Iron. The officers arrested defendant and

transported him to the station, where he admitted that he stole the tools for money to buy drugs. On cross-examination, Officer Lehner stated that during their conversation on the street, he asked defendant two or three times where he got the tools and that the questioning lasted one or two minutes. The defense presented no testimony.

After the trial court found defendant guilty of burglary, the court held a hearing on defendant's fitness to be sentenced, at which the parties stipulated that a staff psychiatrist for Forensic Clinical Services observed defendant and would testify to a reasonable degree of medical and psychiatric certainty that defendant was fit for sentencing while taking certain medications. The court found defendant fit for sentencing and imposed a term of eight years in prison for the offense. In addition, the court ordered defendant to submit a sample of blood, saliva or tissue for inclusion in a DNA database pursuant to section 5-4-3 of the Unified Code of Corrections (730 ILCS 5/5-4-3 (West 2004)).

## ANALYSIS

### I. Effectiveness of Trial Counsel

On appeal, defendant first contends that he received ineffective assistance of trial counsel because his attorney did not move to suppress the contents of the toolboxes or his incriminating statements to police. He argues that his most promising defense involved the exclusion of that evidence, and he asserts his trial counsel did not follow a sound trial strategy by failing to move to suppress that evidence.

To support a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and, furthermore, that

1-04-3686

counsel's actions resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). In determining whether a defendant suffered substantial prejudice in a situation involving a motion to suppress, a reviewing court considers whether a reasonable probability exists that: (1) the motion to suppress would have been granted; and (2) the outcome of the trial would have been different had the evidence been suppressed. *People v. Orange*, 168 Ill. 2d 138, 153, 659 N.E.2d 935, 942 (1995).

Defendant argues that a motion to suppress likely would have succeeded because the officers lacked a reasonable suspicion to stop and question him and further lacked probable cause to search the toolboxes. Moreover, he asserts that because his most viable defense was the suppression of the contents of the tool cases and the suppression of his inculpatory statements, he would not have been convicted absent that evidence. We agree with defendant on both points.

The fourth amendment to the United States Constitution and article I, section 6, of the Illinois constitution protect citizens from unreasonable searches and seizures by the government. U.S. Const., amends. IV, XIV, Ill. Const. 1970, art. I, § 6. Three types of police-citizen interaction are not considered to be seizures under the fourth amendment: (1) an arrest, which must be supported by probable cause; (2) a *Terry* stop; or (3) community caretaking, which describes a consensual encounter generally for public safety. *People v. White*, 221 Ill. 2d 1, 21, 849 N.E.2d 406, 418 (2006).[1]

In a *Terry* stop, a police officer may detain a person without having probable cause to arrest; however, the officer must have a reasonable, articulable suspicion that the person detained

_____

[1] Neither party purports that the officers were performing community caretaking.

-20-

1-04-3686

has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The facts supporting a reasonable suspicion for a *Terry* stop need not constitute probable cause to arrest, and officers do not have to witness a violation of the law; however, a mere hunch is insufficient to justify a *Terry* stop. *People v. Beverly*, 364 Ill. App. 3d 361, 369, 845 N.E.2d 962, 969 (2006).

Defendant argues that the officers did not perform a lawful *Terry* stop because they interrogated him without having a reasonable suspicion that he had committed a crime. Defendant asserts that although he may have initially consented to talk to the officers, the encounter turned into an unlawful seizure during their questioning. He contends that the facts known to Officer Lehner and his partner at that time, *i.e.*, his act of walking down the street carrying two tool cases, were insufficient to give the officers a reasonable suspicion of criminal activity. We agree.

A *Terry* stop is proper if a person of reasonable caution believes that the action taken was justified knowing the facts available at the time of the stop. *People v. Spann*, 332 Ill. App. 3d 425, 433, 773 N.E.2d 59, 66 (2002). The reasonableness of a *Terry* stop is dependent on whether the officer's action was: (1) justified at its inception; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879; see also *People v. Gonzalez*, 204 Ill. 2d 220, 228-29, 789 N.E.2d 260, 266 (2003). A *Terry* stop must be objectively reasonable and predicated on specific and articulable facts that, taken together with the resulting inferences, would warrant the intrusion. *People v. Hopkins*, 363 Ill. App. 3d 971, 981, 845 N.E.2d 661, 671 (2005). Officer

Lehner testified that after he saw defendant walking down the street carrying two toolboxes, he reversed the direction of his vehicle and pulled it to the curb beside defendant. Seeing a person walking down the street carrying toolboxes does not support an objectively reasonable suspicion of criminal activity.

When the officer asked defendant "what he had in the [tool] cases and what they were," defendant gave several inconsistent answers. The State argues that defendant's responses "heightened" Officer Lehner's suspicions about the toolboxes, which the State points out were "professional-grade boxes" that bore a company logo. We acknowledge that investigative *Terry* stops have been described as "evolving encounters where new facts continually emerge, feeding into the *Terry* calculus and justifying police action that only moments before would have been unlawful." *People v. Sloup*, 359 Ill. App. 3d 841, 847, 834 N.E.2d 995, 1001 (2005); see also *People v. James*, No. 1-05-0811 (May 5, 2006). However, the State cannot point to the evidence collected during the stop – *i.e.*, the inconsistent answers that defendant gave to Officer Lehner's questions and any observations the officers may have made about the characteristics of the toolboxes – and use that evidence in a "bootstrap" fashion to support the officer's reasonable articulable suspicion for making the stop in the first place.

*Terry* allows an officer to "briefly stop a person for temporary questioning if the officer has knowledge of sufficient articulable facts at the time of the encounter to create a reasonable suspicion that the person in question has committed or is about to commit a crime." *People v. Lee*, 214 Ill. 2d 476, 487, 828 N.E.2d 237, 246 (2005). The conduct justifying a stop under *Terry* must have been justified at its inception. *People v. Thomas*, 198 Ill. 2d 103, 109, 759 N.E.2d

899, 902 (2001). "Viewed as a whole, the situation confronting the police officer must be so far from the ordinary that any competent officer would be expected to act quickly." *Thomas*, 198 Ill. 2d at 109-10, 759 N.E.2d at 902-03. While we acknowledge the viewpoint in *Sloup* and *James* that investigatory stops are "evolving encounters," in the instant case, the State presented no testimony of facts that were known to the officers at the outset of the conversation that would support a belief that defendant had committed or was about to commit a crime. Aside from defendant's act of carrying the toolboxes down the street, the State points to no additional information that the officers possessed prior to their stop of defendant.

The State contends that Officer Lehner "briefly detained defendant to investigate possible criminal activity." Again, the State did not offer any facts known to the officers before they stopped defendant, other than their observation of him walking down the street carrying two toolboxes. Furthermore, the undisputed testimony that defendant approached the officers, as opposed to the officers' halting defendant's progress, does not justify the questioning of defendant without a reasonable suspicion of criminal activity.

This court has found defense counsel ineffective for failing to move to suppress evidence in cases with more comprehensive prosecution testimony than that presented here. In *Spann*, an officer testified that in a neighborhood known for drug activity, he observed the defendant take money from an individual in exchange for an unidentified item. *Spann*, 332 Ill. App. 3d at 433, 773 N.E.2d at 67. However, this court held in *Spann* that the defendant's counsel was ineffective for failing to seek suppression of the evidence given the absence of testimony to support a *Terry* stop, specifically the lack of testimony from the officer "as to what factors he found significant

regarding his decision to approach [the] defendant and conduct further investigation." *Spann*, 332 Ill. App. 3d at 433-34, 773 N.E.2d at 66-67. Comparing the circumstances in *Spann* to the case at bar, for example, the testimony in the instant case did not establish that the officers were aware of a report of stolen tools or indicate that the officers had a description of a suspect whom defendant resembled.

We acknowledge that the decision to file a motion to suppress is generally considered to be a matter of trial strategy immune from ineffective assistance claims. *People v. Deloney*, 359 Ill. App. 3d 458, 466, 835 N.E.2d 102, 109 (2005). "Neither mistakes in trial strategy nor the benefit of another attorney's hindsight are sufficient to demonstrate that the trial lawyer was objectively incompetent." *Deloney*, 359 Ill. App. 3d at 467, 835 N.E.2d at 109. However, in this case, a successful motion would have kept the toolboxes from evidence and also would have prevented the admission of defendant's inculpatory statements to police, thus depleting the whole of the State's case. Had the trial court been unable to consider the evidence obtained in the illegal search or consider defendant's statements, the result of defendant's trial clearly would have been different.

Because a motion to suppress had a reasonable chance of success and the trial's outcome likely would have been different had the motion been made, defense counsel was ineffective for failing to file such a motion. Therefore, we reverse defendant's conviction and remand this case to the trial court to allow defense counsel to file a motion to suppress evidence and, depending on the outcome of the suppression hearing, for a new trial. Given that holding, we need not consider defendant's argument that, had the *Terry* stop been supported by reasonable suspicion, the

officers lacked probable cause to search the toolboxes.

## II. Defendant's Remaining Contentions on Appeal

### A. Stipulated Testimony at Hearing on Defendant's Fitness for Sentencing

After defendant's conviction, the trial court held a hearing on defendant's fitness to be sentenced. The hearing consisted solely of the stipulated testimony of the State's psychiatrist that defendant was fit for sentencing with medications. Defendant now asks this court to vacate the trial court's finding of fitness, asserting that his case should be remanded for a new hearing on his fitness to be sentenced because the court did not admonish him as to the stipulation and ascertain that he agreed to it, as defendant argues was required pursuant to *People v. Campbell*, 208 Ill. 2d 203, 802 N.E.2d 1205 (2003). Because we have reversed defendant's conviction and sentence and are remanding based on our resolution of the *Terry* stop issue, defendant's request for a new hearing on his fitness to be sentenced is moot. We make no comment on whether the holding in *Campbell* applies in the context of a hearing on a defendant's fitness to be sentenced.

### B. Constitutionality of DNA Statute

In addition, we note defendant's argument that the compulsory extraction of his DNA pursuant to section 5-4-3 of the Unified Code of Corrections (730 ILCS 5/5-4-3 (West 2002)), violates his fourth amendment right to be free of unreasonable searches and seizures. However, in the time since defendant asserted that argument, it has been addressed by the Illinois Supreme Court in *People v. Garvin*, 219 Ill. 2d 104, 847 N.E.2d 82 (2006), which upheld the statute's

1-04-3686

constitutionality.  We therefore reject defendant's contentions on this point.


CONCLUSION

In summary, we hold that defendant received ineffective assistance of counsel because a motion to suppress evidence likely would have succeeded given the lack of evidence that officers had a reasonable articulable suspicion of criminal activity when they questioned defendant. Accordingly, this case is remanded to allow the filing of such a motion, and for a new trial if one is necessary based on the outcome of the motion.